628 S.E.2d 808 (2006)
In the Matter of D.D.J., D.M.J., Minor Children.
No. COA05-903.
Court of Appeals of North Carolina.
May 2, 2006.
Cindy Goddard Strope, Jacksonville, for petitioner-appellee.
Richard E. Jester, Louisburg, for respondent-appellant.
M. Lynn Smith, Jacksonville, for guardian ad litem.
*809 GEER, Judge.
Respondent mother, A.J., appeals from an order terminating her parental rights with respect to her son D.D.J. and her daughter D.M.J. We hold that the trial court lacked jurisdiction because (1) the children were not in the custody of the Onslow County Department of Social Services at the time the petition to terminate A.J.'s parental rights was filed, and (2) the children were not "resid[ing] in" or "found in" North Carolina at that time. N.C. Gen.Stat. § 7B-1101 (2005). We, therefore, vacate the trial court's order.

Factual and Procedural History
The children were adjudicated neglected juveniles on 29 November 2001, primarily because of domestic violence and substance abuse issues in their home. Following this adjudication, the children resided in foster care for a time, but the Onslow County Department of Social Services ("DSS") ultimately placed them in South Carolina with their maternal great-uncle and great-aunt, Durand and Tammy Williams. Respondent mother separated from the children's father in the summer of 2002, and the father moved to Texas.[1]
On 15 August 2003, the district court held a permanency planning hearing. Subsequently, it entered an order on 26 September *810 2003 placing "[f]ull custody" of the children with Durand and Tammy Williams and stating that DSS, the guardian ad litem, and the attorney advocate were released and the children's case was closed.
Two months later, on 3 December 2003, DSS filed a petition to terminate the parental rights of respondent mother and the children's father. Thereafter, on 17 March 2004, the district court amended the 26 September 2003 order, purporting to sign it nunc pro tunc 15 August 2003. Rather than giving full custody to Mr. and Mrs. Williams, the amended order gave legal custody to DSS and physical custody to the Williamses. The new order also, rather than closing the case, provided that the case plan for the children was changed from relative placement to termination of parental rights.
The trial court held a hearing on DSS' 3 December 2003 petition on 16 April 2004 and 6 May 2004. More than five months later, on 14 October 2004, the trial court entered an order terminating both parents' parental rights. Respondent mother has timely appealed from this order.

Discussion
Respondent mother argues on appeal that the district court did not have jurisdiction to rule on DSS' petition to terminate her parental rights. Because DSS did not have custody of the children when it filed the petition, we agree and vacate the order terminating respondent mother's parental rights.
N.C. Gen.Stat. § 7B-1101 provides that "[t]he court shall have exclusive original jurisdiction to hear and determine any petition or motion relating to termination of parental rights to any juvenile who resides in, is found in, or is in the legal or actual custody of a county department of social services or licensed child-placing agency in the district at the time of filing of the petition or motion." In other words, there are three sets of circumstances in which the court has jurisdiction to hear a petition to terminate parental rights: (1) if the juvenile resides in the district at the time the petition is filed; (2) if the juvenile is found in the district at the time the petition is filed; or (3) if the juvenile is in the legal or actual custody of a county department of social services or licensed child-placing agency in the district at the time the petition is filed.
It is undisputed that DSS did not have custody of the children on 3 December 2003, the date upon which the petition was filed. Furthermore, according to the petition itself, the children were living in South Carolina at the time of the filing, so they were not "residing in" or "found in" this State. See In re Leonard, 77 N.C.App. 439, 440, 335 S.E.2d 73, 73-74 (1985) (holding that because mother left with child for Ohio four days before filing of petition to terminate parental rights, the child was neither "residing in" nor "found in" the district at the time of filing, and the petition failed for lack of subject matter jurisdiction). Given these facts, the trial court lacked jurisdiction under N.C. Gen.Stat. § 7B-1101 to enter any order terminating respondent mother's parental rights.
Moreover, N.C. Gen.Stat. § 7B-1103 (2005) specifies who has standing to file a termination of parental rights petition. DSS relied upon § 7B-1103(a)(3), which allows a petition to be filed by "[a]ny county department of social services, consolidated county human services agency, or licensed child-placing agency to whom custody of the juvenile has been given by a court of competent jurisdiction." Although DSS' petition alleged it had been granted custody pursuant to a non-secure custody order dated 25 October 2001, it no longer had custody as of the date of the filing of the petition. DSS, therefore, lacked standing to file the petition. In re Miller, 162 N.C.App. 355, 358, 590 S.E.2d 864, 866 (2004) ("Because DSS no longer had custody of the child, DSS lacked standing, under the plain language of N.C. Gen.Stat. § 7B-1103(a), to file a petition to terminate respondent's parental rights."). This Court held in Miller that DSS' lack of standing deprived the district court of subject matter jurisdiction, meaning that "the proceedings to terminate respondent's parental rights were a nullity." Id. at 359, 590 S.E.2d at 866.
DSS argues on appeal, however, that the amended order filed on 17 March 2004, *811 which purported to undo the trial court's grant of full custody to the Williamses, should operate retroactively to validate DSS' 3 December 2003 petition. DSS contends that the 26 September 2003 order was entered due to a clerical mistake, and the 17 March 2004 order should be applied retroactively because it merely corrected that mistake.
A clerical error is "`[a]n error resulting from a minor mistake or inadvertence, esp[ecially] in writing or copying something on the record, and not from judicial reasoning or determination.'" State v. Jarman, 140 N.C.App. 198, 202, 535 S.E.2d 875, 878 (2000) (quoting Black's Law Dictionary 563 (7th ed 1999)). Generally, clerical errors include mistakes such as inadvertent checking of boxes on forms, e.g., id., or minor discrepancies between oral rulings and written orders, e.g., State v. Sellers, 155 N.C.App. 51, 59, 574 S.E.2d 101, 106-07 (2002). Although DSS relies upon Rule 60(a) of the Rules of Civil Procedure, authorizing the correction of clerical mistakes in judgments, courts do not have the power under Rule 60(a) to affect the substantive rights of the parties or to correct substantive errors in their decisions. Hinson v. Hinson, 78 N.C.App. 613, 615, 337 S.E.2d 663, 664 (1985) ("We have repeatedly rejected attempts to change the substantive provisions of judgments under the guise of clerical error."), disc. review denied, 316 N.C. 377, 342 S.E.2d 895 (1986).
On its face, the 17 March 2004 amendment makes a very substantial, substantive change in the 26 September 2003 order. We can perceive no basis for classifying it as a clerical correction. In the 26 September 2003 order  in contrast to prior orders involving the children  "[f]ull custody" of the children was placed with the Williamses, while DSS, the guardian ad litem, and the attorney advocate were released. Further, the order specified that "this case is closed." In March, custody was changed to provide that DSS retained legal custody, while the Williamses had only physical custody. Rather than closing the case, the order provided that "[t]he case plan is changed from relative placement to termination of parental rights and adoption." Such changes cannot be classified as clerical.
We also note it is questionable whether the court had authority to enter the March order. N.C. Gen.Stat. § 7B-1000(b) (2005) (emphasis added) provides: "In any case where the court finds the juvenile to be abused, neglected, or dependent, the jurisdiction of the court to modify any order or disposition made in the case shall continue during the minority of the juvenile, until terminated by order of the court, or until the juvenile is otherwise emancipated." Our Court has held that once jurisdiction has been terminated by court order, "the trial court [has] no further duty or authority to conduct reviews." In re Dexter, 147 N.C.App. 110, 115, 553 S.E.2d 922, 925 (2001). DSS has provided no explanation of how the trial court came to enter the 17 March 2004 amended order; the record contains no motions, pleadings, or transcripts of hearings relating to the entry of either the 26 September 2003 order or the 17 March 2004 order. Nor does DSS include in its brief any citation of statutory or case law authority that would allow the court to act after it had closed the case. See In re P.L.P., ___ N.C.App. ___, ___, 618 S.E.2d 241, 245 (2005) (holding that jurisdiction in the district court was "terminated by the trial court's order to `close' the case" and that DSS was required to file a new petition alleging neglect), aff'd per curiam, 360 N.C. 360, 625 S.E.2d 779 (2006).
Because, at the time of the filing of the DSS petition, DSS lacked standing to petition for termination of parental rights and the trial court lacked subject matter jurisdiction to hear DSS' petition, "the proceedings to terminate respondent's parental rights were a nullity," and the order from which respondent appeals must be vacated. Miller, 162 N.C.App. at 359, 590 S.E.2d at 866.
Vacated.
Judges HUDSON and TYSON concur.
NOTES
[1] The children's father is not party to this appeal.