IN THE MATTER OF: M.G.T.-B.

No. COA05-1396

(Filed 6 June 2006)

**1. Appeal and Error— preservation of issues—quashal of subpoena—assignment of error—no offer of proof**

An assignment of error was not properly preserved for appeal and was not addressed where the mother contended that the court used an improper standard in determining that a juvenile was not competent and quashing a subpoena, but made no offer of proof about the testimony that she sought to elicit and no competent reason for subpoenaing the child could be gleaned.

**2. Evidence— hearsay—harmless error—other evidence**

Any error in the admission of hearsay statements from a child abuse victim was harmless where there was sufficient other evidence on which the court could base its finding of neglect.

Appeal by respondent-mother from order entered 1 March 2005 by Judge Monica Bousman in Wake County District Court. Heard in the Court of Appeals 13 April 2006.

*Susan J. Hall for respondent-mother appellant.*

*Richard Croutharmel for Guardian Ad Litem, petitioner appellee.*

*Corinne G. Russell for Wake County Human Services, petitioner appellee.*

**IN RE M.G.T.-B.**

[177 N.C. App. 771 (2006)]

McCULLOUGH, Judge.

Respondent-mother appeals from an adjudication of abuse, neglect, and dependency entered 1 March 2005 in district court. We affirm.

## FACTS

On 28 July 2004 Patrice Garlington ("Ms. Garlington"), an investigator with Wake County Human Services, received an allegation that the juvenile, M.G.T.-B., was being sexually abused by her stepfather and brother. The report alleged that when M.G.T.-B.'s mother and stepfather would fight he would come into her room and touch her inappropriately, that she had a toothache, had been sick in school on various occasions, and that respondent-mother was difficult to reach when attempts were made to contact her to pick up M.G.T.-B. from school.

In the initial home visit by Ms. Garlington, she spoke with respondent-mother regarding the report and her concerns. Ms. Garlington stated that as far as the allegations were concerned, respondent-mother didn't feel like there was anything to be worried about and appeared to be cooperative. Ms. Garlington implemented a safety plan which required that there be no unsupervised contact between the juvenile children in the home with either the stepfather or adult brother.

During a further investigation, Ms. Garlington learned that M.G.T.-B. made similar disclosures to adults at her school. At this point she contacted respondent-mother and asked her to have the stepfather and adult brother leave the home for the course of the investigation. Respondent-mother stated that she did not believe any of the allegations, did not trust M.G.T.-B., and that it was not possible for the men to leave the home. Respondent-mother further stated that the only option was for the child to be taken away by the agency. The child was not removed from the home at this time as respondent-mother agreed to continue to follow the safety plan that had originally been implemented.

On 13 August 2004, Ms. Garlington again visited the home of respondent-mother and M.G.T.-B. Upon arriving at the home, Ms. Garlington inquired of the adult brother as to where M.G.T.-B. was, and he reported that he was the only one at home and that M.G.T.-B. was at school. At that time, Ms. Garlington asked if she could look through the house to verify that M.G.T.-B. was not there and she noticed that the door to the juvenile's bedroom was locked by deadbolt. Ms. Garlington waited until respondent-mother came home at which time she learned that M.G.T.-B. was locked in her bedroom. Ms. Garlington then took the juvenile to her car to talk, where she learned that M.G.T.-B. was afraid

of her mother and unable to talk with her mother around. Ms. Garlington then informed respondent-mother that she was taking the child into non-secure custody out of concern for her safety. According to Ms. Garlington, respondent-mother began screaming at M.G.T.-B. that "you're not my daughter; you're on your own"; and saying "go away"; and calling her names such as "whore" and "bitch." Respondent-mother further stated that she did not want to see the child anymore and that the child no longer had a mother.

On 13 August 2004, the court entered a juvenile petition of abuse, neglect, and dependency and the child was ordered into the non-secure custody of the Department of Social Services. At trial Wake County Human Services and the juvenile's guardian *ad litem* made a motion to quash a subpoena issued by respondent-mother to M.G.T.-B. The trial judge contacted the juvenile's therapist, Ms. Drake, by telephone while in the courtroom and inquired as to whether M.G.T.-B. was able to testify. The trial judge asked counsel for respondent-mother to make an offer as to what she expected M.G.T.-B. would say if required by the court to testify. Counsel for respondent-mother replied, "Well, honestly, I have no way of knowing that, Judge." Based on the information the trial judge received about M.G.T.-B., she granted the motion to quash and found that the statements of the juvenile, offered through Ms. Garlington were offered as evidence of a material fact, the statements were more probative on the point for which they were offered than any other evidence which could be procured through reasonable means, and that the general purposes of the rules and interests of justice would best be served by introduction of the juvenile's statements into evidence. Respondent-mother did not make an offer of proof.

The trial court entered an order on 1 March 2005 concluding that M.G.T.-B. was abused, neglected, and dependent.

Respondent-mother now appeals.

## ANALYSIS

### I

**[1]** On appeal, respondent-mother contends that the trial court erred in applying an improper standard to determine whether or the not the minor victim was competent to testify. We disagree.

North Carolina General Statutes Section 8C-1, Rule 601, states

[a] person is disqualified to testify as a witness when the court determines that he is (1) incapable of expressing himself concern-

ing the matter as to be understood, either directly or through interpretation by one who can understand him, or (2) incapable of understanding the duty of a witness to tell the truth.

N.C. Gen. Stat. § 8C-1, Rule 601(b) (2005). Determining the competency of a witness to testify lies within the trial court's ambit of sound discretion. *State v. Phillips*, 328 N.C. 1, 17, 399 S.E.2d 293, 301, *cert. denied*, 501 U.S. 1208, 115 L. Ed. 2d 977 (1991).

In the instant case, the question of the competency of M.G.T.-B. was raised by Wake County Human Services and the juvenile's guardian *ad litem* in support of a motion to quash a subpoena issued by respondent-mother requiring M.G.T.-B. to testify. The trial court determined that M.G.T.-B. was not competent to testify and granted the motion to quash the subpoena. There was no evidence presented to the trial court regarding the testimony that respondent-mother sought to elicit from the juvenile, and this Court is unable to glean any competent reason for the subpoena of the child.

" ' "It is well established that an exception to the exclusion of evidence cannot be sustained where the record fails to show what the witness' testimony would have been had [s]he been permitted to testify." ' " *State v. Golphin*, 352 N.C. 364, 462, 533 S.E.2d 168, 231 (2000) (citations omitted), *cert. denied*, 532 U.S. 931, 149 L. Ed. 2d 305 (2001), *cert. denied*, 358 N.C. 157, 593 S.E.2d 84 (2004). " ' "[I]n order for a party to preserve for appellate review the exclusion of evidence, the significance of the excluded evidence must be made to appear in the record and a specific offer of proof is required unless the significance of the evidence is obvious from the record." ' " *Id.*

Respondent-mother made no offer of proof upon the trial court's exclusion of the child's testimony. Further, there is no indication that the juvenile would have testified in any manner inconsistent with the testimony of Ms. Garlington. Where this assignment of error was not properly preserved for appellate review, we decline to address the issue presented to this Court and therefore it is overruled.

II

**[2]** Respondent further contends on appeal that the trial court erred in admitting hearsay statements of the victim through the testimony of Ms. Garlington and failing to make specific findings of fact required for admission of hearsay statements pursuant to N.C. Gen. Stat. § 8C-1, Rule 803(24). We disagree.

Hearsay is by definition "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2005). When one attempts to introduce such a statement at trial to prove the truth of the matter asserted, the statement is inadmissible unless it falls within one of the exceptions enumerated by the statutes and case law of this state. One such enumerated exception is stated in N.C. Gen. Stat. § 8C-1, Rule 803(24):

> A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

N.C. Gen. Stat. § 8C-1, Rule 803(24) (2005). However, even when the trial court commits error in allowing the admission of hearsay statements, one must show that such error was prejudicial in order to warrant reversal. *State v. Ramey*, 318 N.C. 457, 470, 349 S.E.2d 566, 574 (1986) ("It is well established that the erroneous admission of hearsay, like the erroneous admission of other evidence, is not always so prejudicial as to require a new trial.").

In the instant case, notwithstanding the hearsay statements made by M.G.T.-B., there was sufficient evidence on which the trial court could base a finding of neglect. The evidence at trial clearly showed (1) respondent-mother agreed to a protective safety plan and then violated that plan by leaving M.G.T.-B. alone with the alleged assaulters; (2) an examining doctor found extensive eroding dental caries going into the gums and a one-inch linear scar on the juvenile's lower leg which was opined to be inflicted by respondent-mother's use of either a shoe, a stick with thorns, or the metal part of a belt; (3) respondent-mother called the juvenile a "whore" and a "bitch" and further stated that the juvenile was no longer her daughter, that she was on her own and no longer had a mother; and (4) expert testimony that M.G.T.-B. displayed symptoms of anxiety, anger, disassociation, and post-traumatic stress disorder. This Court concludes that these facts standing alone were sufficient to warrant a determination of dependency and neglect and therefore any error in admission of hearsay statements was harmless.

Therefore, this assignment of error is overruled.

**IN RE J.H.**

[177 N.C. App. 776 (2006)]

Accordingly, this Court declines to consider whether the determination of incompetency was proper where the issue was not properly preserved for appeal, and we further find no prejudicial error in the admission of the hearsay statements of M.G.T.-B. through the testimony of Ms. Garlington. Moreover, all other assignments of error not briefed on appeal are deemed abandoned.

Affirmed.

Judges CALABRIA and STEELMAN concur.