**IN RE H.L.A.D.**

[184 N.C. App. 381 (2007)]

IN THE MATTER OF: H.L.A.D., MINOR CHILD

No. COA07-34

(Filed 3 July 2007)

**1. Termination of Parental Rights— jurisdiction-continuing— child moving out of state**

A North Carolina court did not lack subject matter jurisdiction to enter an order terminating parental rights where the child and the child's guardians had moved from North Carolina to Alabama. The courts of North Carolina retained exclusive, continuing jurisdiction after the initial custody determination, and the requisites of "substantial connection" jurisdiction were met.

**2. Termination of Parental Rights— jurisdiction—notice— failure to attach copy of custody order to petition**

The trial court had jurisdiction over a termination of parental rights proceeding where petitioner did not attach a copy of the custody order to the petition. There was no indication that respondent was unaware of the child's placement, and respondent was unable to demonstrate any prejudice.

**3. Appeal and Error— preservation of issues—sufficiency of petition—not raised below**

A Rule 12(b)(6) motion may not be made for the first time on appeal, and respondent did not properly preserve for appeal the issue of whether the petition for termination of parental rights alleged sufficient facts. Respondent's motions to dismiss came at the close of the evidence and were based on sufficiency of the evidence rather than sufficiency of the petition.

**4. Termination of Parental Rights— grounds—failure to make progress toward correcting conditions—reunification efforts ended**

The requirements for terminating parental rights based on leaving the child in placement outside the home without reasonable progress were met even though the court had ceased reunification efforts and the permanent plan had been changed to custody by a guardian. The court's findings were based on clear, cogent, and convincing evidence from the time between the initial removal and entry of the order granting guardianship.

**5. Evidence— hearsay—prejudice—general argument not sufficient**

The respondent in a termination of parental rights hearing did not demonstrate prejudice from the introduction of a DSS file and other hearsay. A general claim that the evidence was highly prejudicial is not sufficient; furthermore, other evidence supported the court's findings and conclusion.

**6. Termination of Parental Rights— findings—negative influence on child**

The trial court's findings in a termination of parental rights case that respondent had a disruptive and negative influence on the juvenile were supported by clear, cogent, and convincing evidence.

**7. Appeal and Error— assignments of error—sufficiency of evidence to support findings—specificity required**

Findings in a termination of parental rights case that were not supported by specific assignments of error were deemed to be supported by sufficient evidence and were binding on appeal.

**8. Termination of Parental Rights— appeal—only one ground required—others not considered**

Only one ground for termination of parental rights is necessary. Contentions concerning other grounds were not considered on appeal where the first was properly found.

Judge LEVINSON dissenting.

Appeal by respondent father from order entered 14 September 2006 by Judge Thomas G. Taylor, in Gaston County District Court. Heard in the Court of Appeals 23 April 2007.

*Sofie W. Hosford for petitioners-appellees, James R. Helms and Crystal Helms.*

*Page Dolley Morgan, for Guardian ad Litem.*

*Duncan B. McCormick for respondent-appellant father.*

STEELMAN, Judge.

When a court of this State, in an initial custody order, awards custody of a child to custodial guardians who thereafter move out of

**IN RE H.L.A.D.**

[184 N.C. App. 381 (2007)]

North Carolina, the courts of this State maintain exclusive, continuing jurisdiction pursuant to the Uniform Child-Custody Jurisdiction and Enforcement Act when the guardians file a petition, in a separate action, for the termination of parental rights.

H.D. was born in 2002 in Gaston County, North Carolina. On 27 March 2003, H.D. was found with her father, Chad D. (respondent), while he "was under the influence of marijuana[.]" Respondent "had left two loaded unsecured guns[,] a handgun and a rifle, within the reach of [one-year old H.D.]" At that time, respondent "had mental health problems" and "suffered from alcohol abuse."

On 28 March 2003, H.D. was placed in the custody of Gaston County Department of Social Services (DSS), and on 13 May 2003, the court adjudicated H.D. to be neglected and dependent. H.D. was placed with Kelly A. (mother). Thereafter, mother and respondent resumed their relationship, and mother and H.D. moved in with respondent, in violation of a court order. DSS removed H.D. from mother's custody.

On 19 August 2003, the court approved a case plan ordering that respondent "submit to random drug screens, comply with parenting training, anger management and drug and psychological evaluations." Prior to August 2003, respondent attended only two of five scheduled supervised visitations with H.D.

On 21 October 2003, the court placed H.D. in foster care with Tony and Christine Helms, relatives of H.D.'s mother, and ordered that respondent comply with the recommendations of DSS. Between October 2003 and 14 January 2004, the court found that "[mother and respondent] made minimal efforts to comply with recommendations and remedy the conditions that necessitated removal." Respondent's contact with Tony and Christine Helms was "disruptive and negative," and respondent's "repeated interference" resulted in the foster parents "surrendering [H.D.] to [DSS] rather than deal further with [respondent]."

On 14 March 2005, the District Court of Gaston County, North Carolina, entered an order, to which respondent consented, granting custody of H.D. to James R. and Crystal Helms, who were also relatives of H.D.'s mother.

On 27 June 2005, the court entered an order amending the 14 March 2005 order to require respondent to submit to "hair follicle

drug tests." The court also scheduled telephonic contact between respondent and H.D.

On 31 August 2005, the court entered an order suspending visitation and finding that respondent had not submitted to drug tests as previously ordered. Respondent testified that he "had no good excuse" for not taking the required drug tests.

On 17 May 2006, respondent sought to reinstate visitation with H.D. through a motion in the cause, on grounds that he had complied with the court's 31 August 2005 order. Respondent complied with the order in that he had submitted to a hair follicle drug test, but the results of the test were positive for marijuana metabolites. On 21 June 2005, the court entered an order denying respondent visitation. After the court's order on 21 June 2005, respondent made "no effort to comply with the ordered drug tests."

In February 2006, the court entered an order finding that H.D. had been placed with James R. and Crystal Helms for more than one year and that placement was stable. The trial court found that father violated the March 2005 order by failing to take required drug tests, by interfering with the Helms' peace and quiet through unwarranted "inquiries regarding [H.D.] in an uncooperative, confrontational, and belligerent manner[,]" by refusing to stop using marijuana, and by displaying hostility toward DSS, the foster parents, and the Helms throughout the previous three years.

On 4 April 2006, James R. and Crystal Helms filed a petition in a separate action pursuant to N.C. Gen. Stat. § 7B-1103(a)(2), to terminate respondent and mother's parental rights.

On 14 September 2006, the court entered an order terminating respondent and mother's parental rights, concluding pursuant to N.C. Gen. Stat. § 7B-1111(a)(2), that they had willfully left H.D. in placement outside the home for more than twelve months without reasonable progress, and that it was in H.D.'s best interests to terminate respondent's parental rights.

From this order, respondent appeals. Mother did not appeal the order of termination.

## I: Subject Matter Jurisdiction

[1] In his first argument, respondent contends that the trial court lacked subject matter jurisdiction to enter the order terminating his

parental rights, because H.D. and her custodial guardians resided in Alabama when the petition for termination was filed. We disagree.

"Subject matter jurisdiction refers to the power of the court to deal with the kind of action in question . . . . [and] is conferred upon the courts by either the North Carolina Constitution or by statute." *Harris v. Pembaur*, 84 N.C. App. 666, 667, 353 S.E.2d 673, 675 (1987). Subject matter jurisdiction cannot be conferred by consent or waiver, and the issue of subject matter jurisdiction may be raised for the first time on appeal. *See In re T.R.P.*, 360 N.C. 588, 595, 636 S.E.2d 787, 793 (2006). "The determination of subject matter jurisdiction is a question of law and this Court has the 'power to inquire into, and determine, whether it has jurisdiction and to dismiss an action . . . when subject matter jurisdiction is lacking.' " *In re J.B.*, 164 N.C. App. 394, 398, 595 S.E.2d 794, 797 (2004).

N.C. Gen. Stat. § 7B-1101 (2005), states that "[t]he court shall have *exclusive original jurisdiction* to hear and determine any petition or motion relating to termination of parental rights to any juvenile who resides in, is found in, or is in the legal or actual custody of a county department of social services or licensed child-placing agency in the district at the time of filing of the petition or motion." *Id.* (emphasis added). N.C. Gen. Stat. § 7B-1101 also requires that "before exercising jurisdiction under this Article, the court shall find that it has jurisdiction to make a child-custody determination under the provisions of G.S. 50A-201, 50A-203, or 50A-204[,]" which are jurisdictional provisions under the Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA). *See In re N.R.M., T.F.M.*, 165 N.C. App. 294, 298, 598 S.E.2d 147, 149 (2004); N.C. Gen. Stat. § 50A-101 *et seq.* (2005).

"[W]hen a prior custody order exists, a court cannot ignore the provisions of the UCCJEA and the [Parental Kidnapping Prevention Act]." *In re Brode*, 151 N.C. App. 690, 695, 566 S.E.2d 858, 861 (2002). The first provision under the UCCJEA, N.C. Gen. Stat. § 50A-201, addresses jurisdiction for initial child-custody determinations. The phrase "initial determination" is defined as "the first child-custody determination concerning a particular child." N.C. Gen. Stat. § 50A-102(8). We note that the definition of a "child-custody proceeding" under the UCCJEA specifically includes a proceeding for neglect, abuse, dependency or termination of parental rights. N.C. Gen. Stat. § 50A-102(4).

**IN RE H.L.A.D.**

[184 N.C. App. 381 (2007)]

Once a court of this State has made an initial child-custody determination, the UCCJEA provides for *"exclusive, continuing jurisdiction"* pursuant to N.C. Gen. Stat. § 50A-202 (2005), which mandates that:

(a) Except as otherwise provided in G.S. 50A-204, a court of this State which has made a child-custody determination consistent with G.S. 50A-201 or G.S. 50A-203 has exclusive, continuing jurisdiction over the determination until:

(1) A court of this State determines that neither the child, the child's parents, and any person acting as a parent do not have a significant connection with this State and that substantial evidence is no longer available in this State concerning the child's care, protection, training, and personal relationships; or

(2) A court of this State or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this State.

(b) A court of this State which has made a child-custody determination and does not have exclusive, continuing jurisdiction under this section may modify that determination only if it has jurisdiction to make an initial determination under G.S. 50A-201.

N.C. Gen. Stat. § 50A-202 (2005). This section of the UCCJEA is consistent with *In re Baby Boy Scearce*, in which this Court held that "[o]nce jurisdiction of the court attaches to a child custody matter, it exists for all time until the cause is fully and completely determined." *In re Baby Boy Scearce*, 81 N.C. App. 531, 538-39, 345 S.E.2d 404, 409 (1986) (citations omitted). Further, N.C. Gen. Stat. § 7B-201 provides: "[w]hen the court obtains jurisdiction over a juvenile, jurisdiction shall continue until terminated by order of the court or until the juvenile reaches the age of 18 years or is otherwise emancipated, whichever occurs first." *Id.*

Importantly, we note the distinction between the "exclusive, original jurisdiction" of N.C. Gen. Stat. § 7B-1101, and the "exclusive, continuing jurisdiction" of the UCCJEA. *Blacks Law Dictionary*, 869 (8th ed. 2004), defines "exclusive jurisdiction" to mean "[a] court's power to adjudicate an action or class of actions to the exclusion of all other courts[.]" Further, "original jurisdiction" means "[a] court's power to hear and decide a matter before any other court can review the mat-

**IN RE H.L.A.D.**

[184 N.C. App. 381 (2007)]

ter." *Id.* "Continuing jurisdiction[,]" however, is defined as "[a] court's power to retain jurisdiction over a matter after entering a judgment, allowing the court to modify its previous rulings or orders." *Blacks Law Dictionary*, 868 (8th ed. 2004). N.C. Gen. Stat. § 7B-1101 therefore provides that the district court in that district shall have the power to adjudicate termination of parental rights proceedings to the exclusion of, and before, all other courts when the circumstances specified in N.C. Gen. Stat. § 7B-1101 relating to that district exist. This, however, does not preclude the district court's exercise of jurisdiction in circumstances in which the court already has "exclusive, continuing jurisdiction" pursuant to the UCCJEA.

The opinion cited by the dissent, *In re Leonard*, 77 N.C. App. 439, 335 S.E.2d 73 (1985) is distinguishable from the instant case. In *Leonard*, this Court held that the district court lacked jurisdiction pursuant to N.C. Gen. Stat. § 7A-289.23 even though the court had jurisdiction pursuant to N.C. Gen. Stat. § 50A-3, the prior version of the UCCJEA, the Uniform Child Custody Jurisdiction Act ("UCCJA"). In *Leonard*, unlike the instant case, there was no indication that there was ever a prior custody determination that would have given the court exclusive, continuing jurisdiction over the child. The codification of N.C. Gen. Stat. § 50A-202, which provided for "exclusive, continuing jurisdiction, *see* 1999 N.C. Sess. Laws ch. 223, § 3, followed the publication of *Leonard*. The concept of "continuing jurisdiction" was neither specifically addressed in the UCCJA nor contemplated by the *Leonard* court.

The provisions of the Parental Kidnapping Prevention Act ("PKPA") are instructive. The PKPA provides that "[t]he jurisdiction of a court of a State which has made a child custody or visitation determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant." 28 U.S.C.A. § 1738A(d) (2002). Subsection (c)(1) provides that "[a] child custody or visitation determination made by a court of a State is consistent with the provisions of this section only if . . . (1) such court has jurisdiction under the law of such State[.]" 28 U.S.C.A. § 1738A(b)(3) defines a child custody determination as "a judgment, decree, or other order of a court providing for the custody of a child, and includes permanent and temporary orders, and initial orders and modifications." This Court has held that "[t]he PKPA has established the national policy with regard to custody jurisdiction, and to the extent a state custody statute conflicts

with the PKPA, the federal statute controls. *In re Bean,* 132 N.C. App. 363, 366, 511 S.E.2d 683, 686.

In the instant case, James R. and Crystal Helms, H.D.'s custodial guardians, resided with H.D. in Alabama when the petition for termination was filed. H.D.'s parents resided in Gaston County, North Carolina. The initial custody determination was made by the Gaston County, North Carolina, court on 28 March 2003, when H.D. was placed in the custody of Gaston County DSS. After this initial custody determination, the courts of this State maintained exclusive, continuing jurisdiction. A court of this State has not made a determination that neither H.D., H.D.'s parents, nor any person acting as H.D.'s parent lack a significant connection with this State. N.C. Gen. Stat. § 50A-202 (2005)(a)(1). Nor has a court determined that "substantial evidence is no longer available in this State concerning the child's care, protection, training, and personal relationships." *Id.* Further, neither a North Carolina court, nor an Alabama court has determined that "the child, the child's parents, and any person acting as a parent do not presently reside in this State." N.C. Gen. Stat. § 50A-202 (2005)(a)(2). To the contrary, both parents continue to reside in Gaston County, North Carolina.

Respondent specifically argues that *In re D.D.J.,* 177 N.C. App. 441, 628 S.E.2d 808, (2006), is binding precedent, and that the trial court lacked jurisdiction to terminate his parental rights. We disagree. In the case of *In re D.D.J.,* this Court held, pursuant to N.C. Gen. Stat. § 7B-1101, that "there are three sets of circumstances in which the court has jurisdiction to hear a petition to terminate parental rights:"

(1) if the juvenile resides in the district at the time the petition is filed; (2) if the juvenile is found in the district at the time the petition is filed; or (3) if the juvenile is in the legal or actual custody of a county department of social services or licensed child-placing agency in the district at the time the petition is filed.

*In re D.D.J.,* 177 N.C. App. at 442-43, 628 S.E.2d at 810. While this is a correct statement of the law, the language of N.C. Gen. Stat. § 7B-1101 and *In re D.D.J.* does not foreclose the establishment of exclusive continuing jurisdiction over a juvenile pursuant to N.C. Gen. Stat. § 50A-201 and 202 of the UCCJEA. In fact, one purpose of the codification of the UCCJEA is specifically to provide for "continuing jurisdiction" in circumstances similar to those of H.D.,

and to address the considerable confusion of the former UCCJA's silence as to continuing jurisdiction.

Further, *In re D.D.J.* is distinguishable from the instant case in two respects: First, in *D.D.J.*, DSS did not have custody of the juvenile, and therefore, lacked standing to file for termination pursuant to N.C. Gen. Stat. § 7B-1103(a)(3) (2005), which provides:

> A petition or motion to terminate the parental rights of either or both parents to his, her, or their minor juvenile may only be filed by one or more of the following: . . . Any county department of social services, consolidated county human services agency, or licensed child-placing agency to whom custody of the juvenile has been given by a court of competent jurisdiction.

Second, the trial court in *D.D.J.* had no jurisdiction to enter the 17 March 2004 order on termination subsequent to granting "full custody" of the juveniles to custodial guardians on 26 September 2003 and specifying that "this case is closed." *See In re P.L.P.*, 173 N.C. App. 1, 7, 618 S.E.2d 241, 245 (2005), *aff'd per curiam*, 360 N.C. 360, 625 S.E.2d 779 (2006) (holding that jurisdiction in the district court was "terminated by the trial court's order to 'close' the case" and that DSS was required to file a new petition alleging neglect).

Here, James R. and Crystal Helms, H.D.'s guardians, had custody of H.D., and therefore, had standing to file a petition for termination pursuant to N.C. Gen. Stat. § 7B-1103(a)(3) (2005). Further, the district court of Gaston County had exclusive, continuing jurisdiction pursuant to N.C. Gen. Stat. § 50A-202(a) (2005). The court did not, at any time, specify that the case as to H.D. was "closed." To the contrary, in an order entered 28 February 2006, the court specifically retained jurisdiction "for further orders." We conclude that the trial court had exclusive, continuing jurisdiction to enter the order terminating respondent's parental rights after jurisdiction attached on 28 March 2003, when the North Carolina court entered an order as to the custody of H.D. Since jurisdiction under the UCCJEA is exclusive and continuing, the courts of North Carolina still had jurisdiction over H.D. to enter an order terminating respondent's parental rights, even though H.D. resided in Alabama with the custodial guardians, because the requisites of "substantial connection" jurisdiction pursuant to Section 201 were met. This assignment of error is overruled.

## II: Motions to Dismiss

[2] In his second argument, respondent contends that the trial court erred by denying respondent's motions to dismiss.

Specifically, respondent argues that the trial court did not have jurisdiction to enter the order terminating respondent's parental rights because petitioners failed to attach a copy of the custody order to the petition for termination in violation of N.C. Gen. Stat. 7B-1104(5) (2005). We disagree.

N.C. Gen. Stat. § 7B-1103 identifies the parties with standing to petition the trial court for termination of parental rights. N.C. Gen. Stat. § 7B-1103; *see also In re T.B.*, 177 N.C. App. 790, 792, 629 S.E.2d 895, 897 (2006). N.C. Gen. Stat. § 7B-1104(5) (2005), sets out the requirements for a petition for termination of parental rights and provides in relevant part that the petition "shall set forth . . . (5) The name and address of any person or agency to whom custody of the juvenile has been given by a court of this or any other state; and a copy of the custody order shall be attached to the petition or motion."

Respondent specifically relies upon *In re Z.T.B.*, 170 N.C. App. 564, 613 S.E.2d 298 (2005), and *In re T.B.*, 177 N.C. App. 790, 629 S.E.2d 895, in which this Court held that failure to comply with N.C. Gen. Stat. § 7B-1104(5) divested the trial court of subject matter jurisdiction. *See In re Z.T.B.*, 170 N.C. App. 564, 613 S.E.2d 298 (holding that because the petitioner failed in the petition to set forth facts known to petitioner, or state that petitioner has no knowledge of facts, regarding the name and address of any judicially appointed guardian, or person or agency awarded custody of the child by a court, and failed to attach the existing custody order to the petition, it was facially defective and did not confer subject matter jurisdiction upon the trial court); *In re T.B.*, 177 N.C. App. 790, 629 S.E.2d 895 (holding that because the petition did not have a copy of the custody order, the petition failed to confer subject matter jurisdiction on the trial court); *but see In re B.D.*, 174 N.C. App. 234, 242, 620 S.E.2d 913, 918 (2005) (holding that the failure to attach a custody order was not reversible error because there was no showing of prejudice where the respondents were aware of the child's placement, the petition noted that "custody of [the child] was given by prior orders[,]" the respondent admitted that the child was "in the legal custody of the Buncombe County Department of Social Services," and the respondents were present at pre-termination hearings in which custody was

granted to petitioner and hearings in which visitation options were discussed and determined), *In re W.L.M.*, 181 N.C. App. 518, 640 S.E.2d 439 (2007) (holding that the failure to attach a custody order was not reversible error because there was no showing of prejudice where there was no indication that the respondent was unaware of the placement or custody of the children at any time, the motion to terminate stated that DSS was given legal custody of the minor children, and the record included a copy of an order, in effect when the motion was filed, that awarded DSS custody of the children). We follow the reasoning of *B.D.* and *W.L.M.* and conclude that *Z.T.B.* and *T.B.* are distinguishable from the instant case.

In *Z.T.B.*, this Court held that the petition to terminate the father's parental rights was facially defective, and the trial court lacked subject matter jurisdiction due to the petitioner's failure to attach an existing custody order to the petition. However, in *Z.T.B.*, "the issue of where the child was physically located and who had legal custody was very much in question at the time the petition to terminate the father's parental rights was filed." *In re W.L.M.*, 181 N.C. App. 518, 640 S.E.2d 439 (2007). This fact situation does not exist in the instant case.

In the case of *In re T.B.*, 177 N.C. App. at 793, 629 S.E.2d at 897, this Court held that "where DSS files a motion for termination of parental rights, the trial court has subject matter jurisdiction only if the record includes a copy of an order, in effect when the petition is filed, that awards DSS custody of the child." However, the Court in *T.B.* also stated that this "omission *need not have been fatal* if petitioner had simply amended the petition by attaching the proper custody order or otherwise ensured the custody order was made a part of the record before the trial court." *Id.*, 177 N.C. App. at 793, 629 S.E.2d at 898 (emphasis in original).

In the instant case, petitioners concede that they did not attached a copy of the custody order to the petition to terminate respondents' parental rights. However, there is also no indication that respondent was unaware of H.D.'s placement at any point during the case. In fact, respondent entered into a consent order providing for H.D.'s guardianship with petitioners. Respondent was certainly aware of H.D.'s residence with the custodial guardians in Alabama. Further, the petition noted that "on February 9, 2005[,] the Petitioners were granted guardianship of the minor child, H.D[,]" and the custody order was made part of the record before the trial court. The petition also stated that "[o]n February 28, 2006, an Order was entered in the

matter of In Re: H.D., . . . which provides that the Court sanctions a permanent plan of Guardianship and that the Petitioners shall remain the juvenile's permanent guardians pending further orders[.]" Various trial court orders in the record on appeal and referenced in the order terminating respondent's parental rights note that respondent was present at pre-termination hearings in which custody was granted to petitioners as well as hearings in which visitation options were determined.

In light of the foregoing, we conclude that respondent is unable to demonstrate any prejudice whatsoever arising from petitioners' failure to attach the pertinent custody order to the petition. Accordingly, we overrule this argument.

**[3]** Respondent next argues that petitioners failed to allege sufficient facts as required by N.C. Gen. Stat. § 7B-1104(6) to warrant a determination that grounds existed to terminate his parental rights.

N.C. Gen. Stat. § 7B-1104 (2005) provides that "[t]he petition, or motion pursuant to G.S. 7B-1102, . . . shall set forth such of the following facts as are known; and with respect to the facts which are unknown the petitioner or movant shall so state: . . . (6) Facts that are sufficient to warrant a determination that one or more of the grounds for terminating parental rights exist." *Id.* "While there is no requirement that the factual allegations be exhaustive or extensive, they must put a party on notice as to what acts, omissions or conditions are at issue." *In re Hardesty*, 150 N.C. App. 380, 384, 563 S.E.2d 79, 82 (2002); see also *In re A.D.L.*, 169 N.C. App. 701, 709, 612 S.E.2d 639, 644, *disc. rev. denied by* 359 N.C. 852, 619 S.E.2d 402 (2005). Merely using words similar to the relevant statutory ground for termination is not sufficient to comply with N.C. Gen. Stat. § 7B-1104(6). *In re Hardesty*, 150 N.C. App. at 384, 563 S.E.2d at 82.

In the instant case, however, respondent failed to preserve this matter for appeal. "The Rules of Civil Procedure apply to proceedings for termination of parental rights[,]" *In re McKinney*, 158 N.C. App. 441, 444, 581 S.E.2d 793, 795 (2003), and a Rule 12(b)(6) motion may not be made for the first time on appeal. *Dale v. Lattimore*, 12 N.C. App. 348, 351-52, 183 S.E.2d 417, 419 (1971) (citations omitted). Respondent made a motion to dismiss after the presentation of petitioner's evidence and at the close of all evidence. Those motions were based on the insufficiency of the evidence, not the legal insufficiency of the petition. Therefore, respondent has not properly preserved this issue for appeal, and this assignment of error is overruled.

### III: Reasonable Progress

**[4]** In his final argument, respondent contends that the trial court erred by concluding that the father willfully left H.D. in placement outside the home for more than twelve months without showing to the satisfaction of the court that reasonable progress had been made to correct the conditions which led to the removal of H.D. We disagree.

Respondent specifically argues that because the trial court ceased reunification efforts and, in an order consented to by respondent, changed the child's permanent plan to custody by a permanent guardian, respondent lost the opportunity to make reasonable progress, and that N.C. Gen. Stat. 7B-1111(a)(2) cannot provide grounds for termination. Respondent argues that respondent's failure to make reasonable progress under N.C. Gen. Stat. 7B-1111(a)(2) could never be willful, since DSS had ceased reunification efforts. We find respondent's argument unpersuasive.

In the case of *In re A.C.F.*, 176 N.C. App. 520, 526, 626 S.E.2d 729, 734 (2006), this Court concluded that the language, " 'for more than 12 months,' " in N.C. Gen. Stat. § 7B-1111(a)(2), must be defined as "the duration of time beginning when the child was 'left' in foster care or placement outside the home pursuant to a court order, *and ending when the motion or petition for termination of parental rights was filed.*" *In re A.C.F.*, 176 N.C. App. at 526, 626 S.E.2d at 734 (emphasis in original); *see also In re C.L.C.*, 171 N.C. App. 438, 447, 615 S.E.2d 704, 709 (2005) (stating that after the termination statute was amended in 2001, the "focus is no longer solely on the progress made in the 12 months prior to the petition"); *In re J.G.B.*, 177 N.C. App. 375, 384, 628 S.E.2d 450, 457 (2006) (stating that "[e]vidence supporting a determination of reasonable progress under N.C.G.S. § 7B-1111(a)(2) 'is not limited to that which falls during the twelve month period next preceding the filing of the motion or petition to terminate parental rights' "). Here, DSS took nonsecure custody of H.D. on 29 March 2003, after which she did not return to respondent's custody. Respondent entered into a consent order on 9 February 2005, granting guardianship to petitioners. This was more than twenty-two months after H.D. was initially removed from respondent's custody, meeting the requirement of N.C. Gen. Stat. § 7B-1111(a)(2) as interpreted by *A.C.F.* The petition for termination was filed on 4 April 2006. H.D. had lived outside of respondent's custody for more than three years. We conclude, and respondent admitted at the hearing on termination, that there was clear, cogent

and convincing evidence of respondent's failure to make reasonable progress between the time of the initial custody determination and the signing of the consent order. At the hearing, attorney for respondent stated that if "they're referring to . . . how [respondent] willfully left the child in a placement outside the home for more than 12 months, okay, that's true, if you take everything that they're saying, before guardianship. We fully admit that." (T Vol 5, P 209).

Moreover, the trial court entered the following findings, which are binding on this Court due to respondent's failure to "set out [an argument] in [his] brief," with cited authority. *See* N.C. R. App. R. 28(b)(6).

43. The Respondents, as parents, have only sporadically complied with the case plans and have, on balance, failed to show any positive response to the efforts to assist them.

44. The Respondent . . . has willfully refused, with no good cause, to stop using marijuana.

45. Respondent . . . is competent to participate in this case, and has been lucid and aware of the meaning of the hearing, and has meaningfully participated in, and assisted his lawyer in his presentation of, evidence before the court.

46. That Respondent . . . has displayed inappropriate behavior and unwarranted hostility toward [DSS], foster parents, and the juvenile's guardians throughout the last three years, leading this Court to conclude that he has not meaningfully address the anger problems which contributed to the juvenile's removal.

Because the trial court's findings support its conclusion that grounds for termination existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(2), and because these findings were based on clear, cogent and convincing evidence stemming from the period of time between H.D.'s initial removal from respondent's custody and respondent's entry of the consent order granting guardianship to petitioners, we conclude that the requirements set forth by N.C. Gen. Stat. § 7B-1111(a)(2) and *A.C.F.* are satisfied. This assignment of error is overruled.

### IV: Hearsay

[5] In his next argument, respondent contends that the trial court erred by overruling his objections to the admission of the DSS file, testimony with respect to the contents of the file, and other tes-

timony that constituted inadmissible hearsay. We disagree. Even assuming *arguendo* that the records contain inadmissible hearsay, respondent has failed to demonstrate that the trial court's order must be reversed.

Respondent does not demonstrate prejudice in his argument on appeal, which is necessary for this Court to reverse the trial court's order. *See In re T.M.*, 180 N.C. App. 539, 548, 638 S.E.2d 236, 241-42 (2006) (citing *In re M.G.T.-B.*, 177 N.C. App. 771, 775, 629 S.E.2d 916, 919 (2006) (holding that "even when the trial court commits error in allowing the admission of hearsay statements, one must show that such error was prejudicial in order to warrant reversal"). Here, respondent makes a general claim that the admission of hearsay "was highly prejudicial." This general argument is not sufficient to establish that the admission of the alleged hearsay evidence prejudiced him. Further, the court's findings and conclusions here are supported by evidence other than the evidence challenged as hearsay. Respondent's own testimony, and that of respondent's father, contained competent evidence to support the findings that grounds existed for termination pursuant to N.C. Gen. Stat. 7B-1111(a)(2). *See In re McMillon*, 143 N.C. App. 402, 411, 546 S.E.2d 169, 175, *disc. review denied*, 354 N.C. 218, 554 S.E.2d 341 (2001) (holding that "[w]here there is competent evidence to support the court's findings, the admission of incompetent evidence is not prejudicial").

Further, there is a presumption in a bench trial is that "the judge disregarded any incompetent evidence that may have been admitted unless it affirmatively appears that he was influenced thereby." *In re L.C.*, 181 N.C. App. 278, 284, 638 S.E.2d 638, 642 (2007) (citing *Stanback v. Stanback*, 31 N.C. App. 174, 180, 229 S.E.2d 693, 696 (1976), *disc. review denied*, 291 N.C. 712, 232 S.E.2d 205 (1977). Respondent bears the burden of showing that the trial court relied on the incompetent evidence in making its findings. *In re Huff*, 140 N.C. App. 288, 301, 536 S.E.2d 838, 846 (2000), *appeal dismissed and disc. review denied*, 353 N.C. 374, 547 S.E.2d 9 (2001). As in the case of *In re L.C.*, respondent has not met this burden. The records and documents to which respondent objects contain over two-thousand pages. However, respondent has failed to make specific allegations that the trial court disregarded inadmissible evidence in making its findings of fact. Rather, respondent generally argues that "the inadmissible hearsay supported a number of adjudicatory findings[.]" This general sort of argument is not sufficient to rebut the presumption that the judge disregarded any incompetent evidence.

IN RE H.L.A.D.

[184 N.C. App. 381 (2007)]

We conclude that respondent has failed to demonstrate that the trial court's order must be reversed and overrule this assignment of error.

## V: Clear, Cogent and Convincing Evidence

[6] In respondent's next argument, respondent contends that pertinent findings of fact were not supported by clear, cogent and convincing evidence, and do not support the trial court's conclusion to terminate respondent's parental rights. We disagree.

On appeal, this Court must determine whether the trial court's findings of fact were supported by clear, cogent and convincing evidence, and whether its conclusion that grounds existed to terminate parental rights was supported by those findings of fact. *In re Huff*, 140 N.C. App. at 291, 536 S.E.2d at 840. The trial court's findings of fact are conclusive if supported by clear and convincing competent evidence, even where the evidence might support contrary findings. *In re Helms*, 127 N.C. App. 505, 511, 491 S.E.2d 672, 676 (1997).

In its order terminating respondent's parental rights, the court found that:

42. Respondent . . . has been a disruptive and negative influence on the juvenile, insisting on the focus of his contact with the juvenile being primarily on the juvenile's reference to him as "daddy," rather than on the juvenile's development, emotional state or interests, all to the juvenile's confusion and detriment.

Respondent contends that even though respondent "had an extremely contentious relationship with the petitioners[,]" respondent was not "disruptive" or "negative," because he made weekly calls to H.D., all of which "did not deal with whether his daughter called him 'daddy'[.]" However, petitioner testified that "[respondent] tells her that . . . we're her pretend daddy and not her real mommy and daddy[;] . . . [that] she's been a bad little girl and Jesus doesn't like it; he's watching[;] . . . that we're trying to steal her from him." Petitioner said, respondent "continue[s] to tell her that we're the reason that he can't visit." Petitioner stated that respondent "was very antagonistic with me [when he called], [and] tried to engage me in arguments." We conclude that respondent's argument as to this finding is unpersuasive, and that the finding is supported by clear, cogent and convincing evidence. *See In re Helms*, 127 N.C. App. at 511, 491 S.E.2d at 676 (holding that findings of fact are conclusive if supported by clear and

**IN RE H.L.A.D.**

[184 N.C. App. 381 (2007)]

convincing competent evidence, even where the evidence might support contrary findings).

**[7]** Respondent generally argues that the remaining challenged findings of fact, numbers 41, 43, 48, 49, 60 and 61, were not supported by clear, cogent and convincing evidence. However, respondent does not bring forward her assignments of error with specific arguments challenging these findings of fact. Rather, respondent only generally states that the findings "are not supported by clear, cogent and convincing evidence." Findings of fact not argued on appeal are deemed to be supported by sufficient evidence, and are binding on appeal. N.C. R. App. P. 28(b)(6) (2006).

## VI: Neglect

**[8]** In respondent's final argument, he contends that the trial court erred by concluding that grounds existed to terminate respondent's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1). As only one ground is necessary to support the termination, and the trial court properly concluded that grounds for termination existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(2), we need not address whether evidence existed to support termination based on N.C. Gen. Stat. § 7B-1111(a)(1). *See In re J.A.A.*, 175 N.C. App. 66, 74, 623 S.E.2d 45, 50 (2005). We decline to address this question.

For the foregoing reasons, we affirm the trial court's decision to terminate respondent's parental rights.

AFFIRMED.

Judge GEER concurs.

Judge LEVINSON dissents in separate opinion.

LEVINSON, Judge dissenting.

I respectfully dissent, on the grounds that the trial court lacked subject matter jurisdiction to enter the order terminating respondent's parental rights. Neither the court's general jurisdiction over proceedings for termination of parental rights, nor its continuing jurisdiction over custody after an initial custody determination, may substitute for the specific standing requirements for termination of parental rights.

**IN RE H.L.A.D.**

[184 N.C. App. 381 (2007)]

Subject matter jurisdiction for termination of parental rights is governed by N.C. Gen. Stat. § 7B-1101 (2005), which provides in pertinent part that:

> The court shall have exclusive original jurisdiction to hear and determine any petition or motion relating to termination of parental rights to any juvenile who resides in, is found in, or is in the legal or actual custody of a county department of social services . . . at the time of filing of the petition or motion. . . . Provided, that <u>before exercising jurisdiction under this Article</u>, the court shall find that it has jurisdiction to make a child-custody determination under the provisions of G.S. 50A-201, 50A-203, or 50A-204. . . . (emphasis added).

"When the language of a statute is clear and without ambiguity, it is the duty of this Court to give effect to the plain meaning of the statute, and judicial construction of legislative intent is not required." *Diaz v. Division of Soc. Servs.*, 360 N.C. 384, 387, 628 S.E.2d 1, 3 (2006) (citing *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990)). The language of Section 7B-1101 is "clear and without ambiguity" and must be applied as written. When petitioners filed the termination of parental rights petition, the minor did not reside in North Carolina, was not found in North Carolina, and was not in the custody of a North Carolina county social services agency. Thus, under G.S. § 7B-1101, the court lacked jurisdiction over the case.

This Court has held that there are

> three sets of circumstances in which the court has jurisdiction to hear a petition to terminate parental rights: (1) if the juvenile resides in the district at the time the petition is filed; (2) if the juvenile is found in the district at the time the petition is filed; or (3) if the juvenile is in the legal or actual custody of a county department of social services or licensed child-placing agency in the district at the time the petition is filed.

*In re D.D.J.*, 177 N.C. App. 441, 442-43, 628 S.E.2d 808, 810 (2006). The majority concedes that "this is a correct statement of the law," yet asserts that "the language of N.C. Gen. Stat. § 7B-1101 and *In re D.D.J.* does not foreclose the establishment of . . . jurisdiction over a juvenile" in a termination of parental rights proceeding "pursuant to N.C. Gen. Stat. §§ 50A-201 and 202 of the UCCJEA." I respectfully disagree for several reasons.

The majority opinion presumably is based on language in Section 7B-1101 following the statute's articulation of the prerequisites for jurisdiction, that "before exercising jurisdiction under this Article, the court shall find that it has jurisdiction to make a child-custody determination under the provisions of G.S. [§] 50A-201, 50A-203, or 50A-204." This statutory language requires that the court <u>not only</u> determine that jurisdiction exists under Section 1101, but that it <u>also</u> make sure "<u>before</u> exercising jurisdiction under this Article" that the exercise of jurisdiction would not run afoul of the UCCJEA. The statute nowhere suggests that compliance with the UCCJEA is a <u>substitute</u> for the jurisdiction requirements of G.S. § 7B-1101. Further, while Section 50A-201 *et seq.* addresses the general limits on a state's jurisdiction in a situation where more than one state might be involved, Section 1101 is <u>specifically</u> addressed to the subject matter jurisdiction requirements for termination of parental rights proceedings. It is a legal truism that "a statute dealing with a specific situation controls, with respect to that situation, other sections which are general in their application." *Utilities Comm. v. Electric Membership Corp.*, 275 N.C. 250, 260, 166 S.E.2d 663, 670 (1969). Accordingly, to the extent that they conflict, the specific provisions of Section 1101 would control jurisdiction in a termination of parental rights case.

Moreover, binding precedent of this Court has held that the provisions of the UCCJEA are no substitute for the jurisdictional requirements of the juvenile code. In *In re Leonard*, 77 N.C. App. 439, 335 S.E.2d 73 (1985), the petitioner father filed to terminate the parental rights of respondent mother. Respondent, who had remarried and moved to Ohio with the minor just days before the petition was filed, argued that "since the mother left with the child for Ohio four days before the petition was filed, the child was not 'residing in' or 'found in' the district 'at the time of filing' and therefore the petition should fail for lack of subject matter jurisdiction." *Id.* at 440, 335 S.E.2d at 73. This Court agreed, and vacated the order for termination of parental rights. In so doing, the Court expressly rejected the position of the majority opinion. In 1985, as is true today, "[b]efore determining parental rights, the court must find under G.S. § 50A-3 [now § 50A-201 *et. seq.*] that it has jurisdiction to make a child custody determination." *Id.* at 441, 335 S.E.2d at 74. In *Leonard* the trial court had "concluded that it would have jurisdiction to determine [the child's] custody under G.S. § 50A-3 [now § 50A-201, *et. seq.*]" *Id.* This Court held that:

**IN RE H.L.A.D.**

[184 N.C. App. 381 (2007)]

> While a determination of jurisdiction over child custody matters will precede a determination of jurisdiction over parental rights, it does not supplant the parental rights proceedings.

*Id.* (emphasis added). It makes no difference whether certain uniform child custody jurisdiction provisions have changed since *Leonard* was decided in 1985, because the essential holding of *Leonard* is that jurisdiction under the UCCJEA cannot substitute for the specific termination of parental rights jurisdictional requirements.

Other cases have likewise held that, before exercising jurisdiction over a termination of parental rights proceeding, the trial court must determine that it has jurisdiction under both G.S. § 7B-1101 and Chapter 50A. *See, e.g., In re N.R.M. and T.F.M.*, 165 N.C. App. 294, 298, 598 S.E.2d 147, 149 (2004) (although children present in North Carolina, thus meeting "the general requirement that the children reside in or be found in the district where the petition is filed" the court nonetheless lacked jurisdiction where Arkansas continued to exercise jurisdiction over the child's custody); *In re Bean*, 132 N.C. App. 363, 366, 511 S.E.2d 683, 686 (1999) (same result where child lived in North Carolina but Florida court still had jurisdiction; Court notes that statute "requires a two-part process" wherein the trial court determines that it has custody under both the UCCJA and G.S. § 7B-1101).

Finally, the holding of *In re D.D.J.*, 177 N.C. App. 441, 628 S.E.2d 808 is functionally indistinguishable from the instant case. In *D.D.J.* this Court held that, where the court did not have jurisdiction under § 7B-1101, the trial court lacked subject matter jurisdiction over the termination of parental rights proceeding. The majority attempts to distinguish *D.D.J.* on the basis that in that case, unlike the instant case, the petitioner lacked standing to file a petition. This is a distinction without a difference because whether a petitioner has standing to file a petition is an issue completely separate from whether a court has jurisdiction under Section 1101.

The majority is correct that, having made an initial custody determination, North Carolina continued to enjoy exclusive continuing jurisdiction over custody matters generally. However, North Carolina did not meet the specific jurisdictional requirements of Section 1101. Both the plain language of the statute and binding precedent establish that the trial court lacked jurisdiction over this termination of parental rights proceeding. Accordingly, the order on appeal must be vacated.