STROUD, Judge.
 

 *410
 
 Respondent appeals from an adjudication order and a disposition order terminating his parental rights to his biological child A.C. ("Amy").
 
 [1]
 
 Respondent also appeals an adjudication order concluding that he is not the biological, legal, or adoptive father of, and thus has no parental rights to, M.C. ("Mandy") and a disposition order regarding Mandy. Because the children resided in Washington state at the time of the filing of the petition for termination of parental rights, the trial court did not have subject matter jurisdiction over the action to terminate parental rights and, we vacate all of the orders on appeal.
 

 I. Background
 

 Petitioner is the biological mother of Amy and Mandy (collectively, "the children"). Mandy was born 9 April 2002. Buddy Bentley ("Bentley"),
 
 *411
 
 Mandy's biological father, is not a party to this appeal. Petitioner and respondent were married on 2 November 2002. Amy was born to the marriage in
 
 *72
 
 December 2004 and respondent is Amy's biological father.
 

 Petitioner joined the United States Army in July 2005 and arranged for the children to live with her parents during her basic training. Beginning in December 2005, while petitioner was deployed to South Korea, the children lived with respondent, respondent's girlfriend, and her eleven-month-old child, Cara. On 9 February 2006, DSS in Rowan County filed two juvenile petitions with respect to Amy, Mandy, and Cara. The Rowan County trial court entered an order adjudicating Amy and Mandy neglected and adjudicating Cara both neglected and abused.
 

 Respondent appealed the Rowan County adjudication of Mandy, Amy and Cara as neglected juveniles. This Court affirmed the neglect adjudication as to all three children.
 
 In re C.J., M.C., and A.C.,
 

 181 N.C.App. 605
 
 ,
 
 640 S.E.2d 448
 
 (2007) (unpublished).
 

 On 17 July 2006, while the neglect adjudication order for Mandy, Amy and Cara was still pending on appeal before this Court, the Rowan County trial court entered several orders granting the physical and legal custody of Mandy and Amy to petitioner and initially granting respondent supervised visitation with both children, and later, when petitioner and the children moved to Washington state, telephonic visitation. Petitioner and respondent were divorced on 28 September 2006. On 4 July 2007, petitioner married her current husband and moved to the State of Washington with both children. Since 2007, the children have lived with petitioner and her new husband in Washington.
 

 During 2009 and 2010, respondent filed several motions in Rowan County regarding visitation and contempt, and the Rowan County court entered orders addressing these issues. On 1 June 2010, the Rowan County court entered its final review order and order terminating jurisdiction of the juvenile court and converting the matter to a Chapter 50 action under N.C.G.S. § 7B-911. The court found that respondent had been exercising his telephonic visitation with the children after petitioner moved to Washington and that there were no changes in circumstances since the May 2006 hearing which would support a change in custody.
 

 On 17 October 2011, in Alexander County, petitioner filed petitions to terminate respondent's parental rights to Mandy and Amy on the grounds of neglect, dependency, and abandonment. The first paragraph in both petitions alleges that "the Petitioner and minor child are citizens and residents of Washington State and have been citizens and residents
 
 *412
 
 of Washington State for more than six (6) months preceding the filing of this action." The petitions were initially returned unserved, with a note that respondent lived in Iredell County. Nearly two years later, on 16 August, 2013, an alias and pluries summons was issued to respondent, and the summons and petition were served on respondent on 20 August 2013. On 29 August 2013, respondent filed an answer to the petition and alleged various defenses, including that petitioner would not permit him to exercise his telephonic visitation as required by the Rowan County order and that he had offered to pay child support but petitioner refused to accept it. On 4 November 2013, respondent filed a motion to dismiss the petition to terminate his parental rights based upon a lack of jurisdiction, alleging that the court did not have jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA").
 

 On 5 February 2014, the Alexander County court entered an order denying respondent's motion to dismiss. The trial court found that the Rowan County court had issued its first order regarding custody of the minor children in 2006. Although the County court had issued an order in June 2010 terminating jurisdiction, it had only terminated jurisdiction of the juvenile court and had converted the matter to a Chapter 50 case under N.C.G.S. § 7B-911(b). The Alexander County court concluded that North Carolina had "exclusive continuing subject matter jurisdiction" under UCCJEA, since respondent continued to reside in North Carolina.
 

 On 17 September 2014, respondent filed an amended answer to the petition, in which he alleged that he had filed an acknowledgement of paternity of Mandy on 1 July 2004 in Iredell County. He also acknowledged that he was not Mandy's biological father but
 
 *73
 
 denied that this fact would be a basis for termination of his parental rights.
 

 On 1 December 2014, the trial court entered an order terminating the parental rights of Bentley, Mandy's biological father, and on the same day, the court entered another order which found that respondent is not "the biological, legal, or adoptive father of the minor child [Mandy]" and concluded that "the respondent has no parental right to the minor child [Mandy]" and decreed that "Respondent has no standing to contest a petition for termination of his parental rights to [Mandy] ... and any objection to termination by this Respondent is dismissed with prejudice." The court also entered adjudication and disposition orders as to Amy. On 19 December 2014, the trial court terminated respondent's parental rights to Amy on the grounds of neglect, failure to pay a reasonable portion of her cost of care, and abandonment. Respondent filed notices of appeal from all four orders.
 

 *413
 
 II. Subject Matter Jurisdiction
 

 Respondent argues that the trial court lacked jurisdiction to enter its orders terminating respondent's parental rights to Amy and concluding he had no parental rights to Mandy. Respondent argues that the Rowan County court had jurisdiction over custody under the UCCJEA but that "the Alexander County court was not statutorily authorized to exercise such jurisdiction." Although respondent's proposed legal basis for the absence of jurisdiction is incorrect, he is correct that the trial court did not have subject matter jurisdiction over termination of parental rights. Even though respondent did not argue the correct statutory basis for the lack of subject matter jurisdiction, "[i]t is well-established that the issue of a court's jurisdiction over a matter may be raised at any time, even for the first time on appeal or by a court
 
 sua sponte.
 
 "
 
 State v. Webber,
 

 190 N.C.App. 649
 
 , 650,
 
 660 S.E.2d 621
 
 , 622 (2008).
 

 We review the issue of subject matter jurisdiction
 
 de novo:
 

 Whether a trial court has subject-matter jurisdiction is a question of law, reviewed
 
 de novo
 
 on appeal. Subject-matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. Subject-matter jurisdiction derives from the law that organizes a court and cannot be conferred on a court by action of the parties or assumed by a court except as provided by that law. When a court decides a matter without the court's having jurisdiction, then the whole proceeding is null and void,
 
 i.e.,
 
 as if it had never happened. Thus the trial court's subject-matter jurisdiction may be challenged at any stage of the proceedings.
 

 Rodriguez v. Rodriguez,
 

 211 N.C.App. 267
 
 , 270,
 
 710 S.E.2d 235
 
 , 238 (2011) (citation omitted).
 

 Respondent's argument is based upon the UCCJEA, which addresses the jurisdiction of a particular state to enter orders regarding child custody; it does not address which county or district within a state has jurisdiction. But North Carolina has a specific statute which governs subject matter jurisdiction over cases involving termination of parental rights. The relevant portion of N.C.G.S. § 7B-1101, which is entitled "Jurisdiction," provides that:
 

 The court shall have
 
 exclusive original jurisdiction
 
 to hear and determine any petition or motion relating to termination of parental rights to any
 
 juvenile who resides
 

 *414
 

 in, is found in, or is in the legal or actual custody of a county department of social services or licensed child-placing agency in the district at the time of filing of the petition or motion.
 
 The court shall have jurisdiction to terminate the parental rights of any parent irrespective of the age of the parent. Provided, that before exercising jurisdiction under this Article, the court shall find that it has jurisdiction to make a child-custody determination under the provisions of G.S. 50A-201, 50A-203, or 50A-204. The court shall have jurisdiction to terminate the parental rights of any parent irrespective of the state of residence of the parent.
 

 N.C.G.S. § 7B-1101 (2013) (emphasis added).
 

 Our courts have long recognized the statutory jurisdictional requirement that the juvenile must reside in or be found in the district in which the petition is filed, or must be in
 
 *74
 
 the legal or actual custody of the department of social services or a licensed child-placing agency at the time of the filing of the petition to terminate parental rights.
 
 See
 

 In re D.D.J.,
 

 177 N.C.App. 441
 
 , 442-43,
 
 628 S.E.2d 808
 
 , 810 (2006) ("In other words, there are three sets of circumstances in which the court has jurisdiction to hear a petition to terminate parental rights: (1) if the juvenile
 
 resides in
 
 the district at the time the petition is filed; (2) if the juvenile
 
 is found in
 
 the district at the time the petition is filed; or (3) if the juvenile is in the legal or actual custody of a county department of social services or licensed child-placing agency in the district at the time the petition is filed." (emphasis in original)). In
 
 In re Leonard,
 
 this Court addressed the interplay between the Uniform Child Custody Jurisdiction Act
 
 [2]
 
 and the statute granting jurisdiction over termination of parental rights.
 
 See
 

 In re Leonard,
 

 77 N.C.App. 439
 
 , 441,
 
 335 S.E.2d 73
 
 , 74 (1985). In
 
 Leonard,
 
 the petitioner-mother left the state of North Carolina on 10 June 1984 to move to Ohio to join her new husband and took the parties' son with her.
 

 Id.
 

 Four days later, she filed a petition in Randolph County to terminate the father's parental rights.
 

 Id.
 

 Because the child resided in Ohio on the date of the filing of the termination petition, this Court vacated the termination order for lack of subject matter jurisdiction under N.C.G.S. § 7A-289.23.
 
 [3]
 

 Id.
 
 at 441,
 
 335 S.E.2d at 74
 
 . The
 
 Leonard
 
 court noted
 
 *415
 
 that the court must have jurisdiction under
 
 both
 
 the UCCJEA and this jurisdictional statute to have the power to adjudicate termination of parental rights.
 

 Before determining parental rights, the court must find under G.S. § 50A-3 that it has jurisdiction to make a child custody determination. G.S. § 7A-289.23. The court concluded that it would have jurisdiction to determine Michael Leonard's custody under G.S. § 50A-3 and this conclusion has not been contested. While a determination of jurisdiction over child custody matters will precede a determination of jurisdiction over parental rights, it does not supplant the parental rights proceedings. The language of the statute is that it shall not be "used to circumvent" Chapter 50A, not that it shall "be in conformity with" Chapter 50A.
 

 The result in this case is not absurd, but it is nonetheless unfortunate.
 

 Id.
 

 In this case, the very first allegation in the petitions to terminate parental rights is that the children "are citizens and residents of Washington State." This fact alone establishes the lack of subject matter jurisdiction for termination of parental rights. Respondent's answers admitted this allegation and all of the evidence and prior orders entered in Rowan County confirm its truth. Both children have resided in Washington state with petitioner since 2007; they did not reside in and were not found in Alexander County when the petition was filed on 17 October 2011. The children have never been in the legal or actual custody of the Alexander County Department of Social Services or any child-placing agency. The Alexander County court did not have subject matter jurisdiction over the petition for termination of parental rights under N.C.G.S. § 7B-1101, and the orders on appeal must be vacated.
 

 III. Conclusion
 

 Because we must vacate the four orders on appeal, both the adjudication and disposition orders as to Amy and Mandy, for lack of subject matter jurisdiction, we need not address the other issues raised by respondent's brief.
 

 VACATED.
 

 Judges CALABRIA and DAVIS concur.
 

 [1]
 

 Pseudonyms are used throughout to protect the identity of the children.
 

 [2]
 

 The UCCJA was later renamed the Uniform Child-Custody Jurisdiction and Enforcement Act and recodified as N.C.G.S. Chapter 50A, Article 2. The relevant provisions for the purposes of this case have not been changed.
 

 [3]
 

 N.C.G.S. § 7A-289.23 was later recodified and is now N.C.G.S. § 7B-1101, the current statute.