IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA17-119

Filed: 5 July 2017

Iredell County, Nos. 15 JA 159-61

IN RE: T.P, T.P. and T.P., Three Minor Juveniles.

Appeal by respondent from order entered 24 October 2016 by Judge H. Thomas Church in Iredell County District Court. Heard in the Court of Appeals 7 June 2017.

*Lauren Vaughan for petitioner-appellee Iredell County Department of Social Services.*

*Melanie Stewart Cranford for guardian ad litem.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Joyce L. Terres, for respondent.*

DAVIS, Judge.

T.P.[1] ("Respondent") appeals from the trial court's 24 October 2016 order placing her three children in the custody of the Iredell County Department of Social Services ("DSS") based on a report of abuse, neglect, or dependency that DSS had received from law enforcement officers. At the time this report was received, the court had previously discontinued periodic judicial reviews and released counsel in connection with proceedings stemming from a prior adjudication of the children as abused juveniles. On appeal, Respondent argues that the court (1) lacked subject

---

[1] Pseudonyms and initials are used throughout this opinion to protect the identity of the juveniles and for ease of reading.

matter jurisdiction to enter the 24 October 2016 order; and (2) erred by failing to conduct an adjudicatory hearing pursuant to Article 8 of the Juvenile Code.

This appeal requires us to consider how a trial court obtains subject matter jurisdiction to enter an order removing the custody of juveniles from their parent in a proceeding governed by N.C. Gen. Stat. § 7B-401(b). After careful review, we vacate the trial court's order for lack of subject matter jurisdiction.

**Factual and Procedural Background**

"Tasha," "Tina," and "Tyler" are Respondent's children from three different fathers — G.P, P.S, and E.K.[2] On 25 August 2015, DSS filed three verified petitions alleging abuse and neglect of Tasha, Tina, and Tyler. On 20 October 2015, an adjudication hearing was held in Iredell County District Court before the Honorable H. Thomas Church. Following the hearing, the trial court entered an order adjudicating the three children to be abused. On 17 November 2015, a dispositional hearing was held, and the trial court issued an order on 1 December 2015 placing the three children in the custody of DSS. Pursuant to the trial court's order, permanency planning hearings were subsequently held every 90 days.

Following a 6 September 2016 permanency planning hearing, the trial court entered an order on 7 September 2016 determining that Respondent was "fit and proper to exercise the care, custody, and control of the juveniles" and ordering that

---

[2] None of the fathers are parties to this appeal.

"[t]he legal and physical custody of the juveniles . . . shall be returned to Respondent Mother." P.S. was given joint legal and physical custody of Tina. G.P. and E.K. were allowed supervised visits with their children. The 7 September 2016 order stated that the court was "retain[ing] jurisdiction" but determined that "no further regular review hearings are scheduled." The order also provided that DSS "is relieved of active monitoring responsibility, the Guardian *ad Litem* Program is relieved, and all counsel is [sic] relieved."

On 14 September 2016, DSS received a new Child Protective Services report stating that law enforcement officers had responded to a domestic altercation two days earlier between Respondent and E.K. On 15 September 2016, a DSS social worker met with Respondent, who admitted that the altercation had occurred and that same day signed a safety plan in which she agreed to obtain a domestic violence protective order ("DVPO") against E.K. Based on its investigation of the incident, DSS determined that immediate removal of the minor children from Respondent's custody was not required.

On 16 September 2016, DSS filed a "Motion for Review" in the existing juvenile matters as to each of the three children, requesting the trial court "to hear and further consider the case" due to a "[c]hange in situation." The motions detailed the 14 September report from law enforcement officers, the social worker's meeting with Respondent, and the safety plan to which Respondent had agreed. The motions

further stated that Respondent had denied that any of the children were present during the altercation but that E.K. had indicated to law enforcement officers that his son had, in fact, been present. The motions also asserted that Respondent had "stated that she was not going to [seek a DVPO], because she was going to move out of the county." On 3 October 2016, DSS filed a "Juvenile Court Summary" stating, in pertinent part, that despite the safety plan Respondent had signed in which she agreed that she would obtain a protective order against E.K., she had failed to follow through by actually obtaining the DVPO.

On 4 October 2016, the trial court held a hearing on the Motions for Review. The social worker, Respondent, and E.K. testified regarding the events of 12 September 2016. DSS recommended that "legal and physical custody of [Tasha] and [Tyler] be placed with [DSS] with [DSS] having placement authority" and that "legal and physical custody of [Tina be placed] with Respondent Father [P.S.]" On 24 October 2016, the court entered an order containing the following pertinent findings of fact:

> 3. This case came on for a Motion for Review filed September 16, 2016, by DSS and a Permanency Planning Review, the above-named juveniles having been found within the jurisdiction of the court as abused on October 20, 2015. The current allegations involve a physical assault that occurred on or about September 12, 2016, between Respondent Mother and [E.K.] in which it is alleged they have been violating Orders of this Court regarding visitation with [E.K.] and that the minor, [Tyler], was present during the altercation.

- 4 -

4. The report of the social worker, which is attached hereto, shall be admitted into evidence and incorporated herein by reference as this Court's findings of fact. Additionally, the Court takes judicial notice of the facts from prior orders entered in this matter and incorporates the same herein by reference. This Court has also considered the Motion for Review and Petitioner's #1 which is the police incident report.

. . . .

6. The allegations in the Motion for Review are consistent with the police report, testimony from the social worker, and the reluctant admission from Respondent Mother that a physical assault did occur. Therefore this Court finds that those allegations contained in the Motion for Review are true and incorporates them herein.

The trial court ultimately ordered that "[t]he legal and physical custody of [Tasha and Tyler] shall be with the Iredell County Department of Social Services" and "[t]he sole legal and physical custody of [Tina] shall be with [P.S.]"  The court also ordered that a subsequent permanency planning hearing be held in 90 days. Respondent filed a timely notice of appeal.

**Analysis**

Respondent argues that the trial court did not possess subject matter jurisdiction to enter its 24 October 2016 order.  Alternatively, she contends that even if subject matter jurisdiction existed, the court erred in failing to conduct an adjudicatory hearing pursuant to the provisions of Article 8 of the Juvenile Code.

Because we conclude that the trial court did, in fact, lack subject matter jurisdiction, we must vacate the order.

"Subject matter jurisdiction refers to the power of the court to deal with the kind of action in question." *Harris v. Pembaur*, 84 N.C. App. 666, 667, 353 S.E.2d 673, 675 (1987) (citation omitted). It is well established that "[s]ubject matter jurisdiction . . . is conferred upon the courts by either the North Carolina Constitution or by statute." *In re M.B.*, 179 N.C. App. 572, 574, 635 S.E.2d 8, 10 (2006) (citation and quotation marks omitted). With regard to "matters arising under the Juvenile Code, the court's subject matter jurisdiction is established by statute." *In re K.J.L.*, 363 N.C. 343, 345, 677 S.E.2d 835, 837 (2009) (citation omitted). "Subject matter jurisdiction cannot be conferred by consent or waiver, and the issue of subject matter jurisdiction may be raised for the first time on appeal." *In re H.L.A.D.*, 184 N.C. App. 381, 385, 646 S.E.2d 425, 429 (2007), *aff'd per curiam*, 362 N.C. 170, 655 S.E.2d 712 (2008) (citation omitted). Whether a court has jurisdiction is a question of law reviewable *de novo* on appeal. *In re K.U.-S.G., D.L.L.G., & P.T.D.G.*, 208 N.C. App. 128, 131, 702 S.E.2d 103, 105 (2010) (citation omitted).

Our Supreme Court has held that a trial court must have subject matter jurisdiction "over the nature of the case and the type of relief sought, in order to decide a case." *In re T.R.P.*, 360 N.C. 588, 590, 636 S.E.2d 787, 790 (2006) (citation and quotation marks omitted).

> A court cannot undertake to adjudicate a controversy on its own motion; rather, it can adjudicate a controversy only when a party presents the controversy to it, and then, *only if it is presented in the form of a proper pleading*. Thus, before a court may act there must be some appropriate application invoking the judicial power of the court with respect to the matter in question.

*In re Transp. of Juveniles*, 102 N.C. App. 806, 808, 403 S.E.2d 557, 558 (1991) (citation omitted and emphasis added).

Thus, "a trial court's general jurisdiction over the type of proceeding or over the parties does not confer jurisdiction over the specific action." *In re McKinney*, 158 N.C. App. 441, 447, 581 S.E.2d 793, 797 (2003). "The instant that the court perceives that it is exercising, or is about to exercise, a forbidden or ungranted power, it ought to stay its action, and, if it does not, such action is, in law, a nullity." *In re Officials of Kill Devil Hills Police Dep't*, 223 N.C. App. 113, 117, 733 S.E.2d 582, 586 (2012) (citation and quotation marks omitted) (holding trial court lacked jurisdiction to enter order permitting employees with grievances against police department to present complaint).

We have applied this rule in cases arising under the Juvenile Code. *See, e.g.*, *McKinney*, 158 N.C. App. at 446-47, 581 S.E.2d at 796-97 (holding that trial court lacked jurisdiction to enter order terminating parental rights where DSS filed "Motion in the Cause" that did not reference pertinent statutory provisions or seek relief in form of termination of parental rights); *see also Transp. of Juveniles*, 102

N.C. App. at 808, 403 S.E.2d at 559 (ruling that trial court did not possess jurisdiction to enter order transporting delinquent juveniles where no complaint or motion was filed seeking such relief).

In the present case, our jurisdictional analysis is impacted by the General Assembly's recent amendment to N.C. Gen. Stat. § 7B-401 for the purpose of adding subsection (b). *See* 2013 N.C. Sess. Laws 305, 308, ch. 129, § 8 (codified as N.C. Gen. Stat. § 7B-401 (2015)). Section 7B-401(b) states as follows:

> If the court has retained jurisdiction over a juvenile whose custody was granted to a parent and there are no periodic judicial reviews of the placement, the provisions of Article 8 of this subchapter shall apply to any subsequent report of abuse, neglect, or dependency determined by the director of social services to require court action pursuant to G.S. 7B-302.[3]

N.C. Gen. Stat. § 7B-401(b) (footnote added).

In order for § 7B-401(b) to apply, four requirements must be met: (1) the court must have "retained jurisdiction over a juvenile whose custody was granted to a parent"; (2) the court must no longer be holding "periodic judicial reviews of the placement" of the juvenile; (3) after the court discontinued periodic judicial reviews,

---

[3] N.C. Gen. Stat. § 7B-302 provides the procedure by which the director of DSS must conduct an assessment "in order to ascertain the facts of the case, the extent of the abuse or neglect, and the risk of harm to the juvenile, in order to determine whether protective services should be provided or the complaint filed as a petition." N.C. Gen. Stat. § 7B-302(a) (2015). This statute also provides that if abuse, neglect, or dependency has occurred, the director must determine whether immediate removal is required or otherwise arrange protective services for the care of the juvenile. N.C. Gen. Stat. § 7B-302(c)-(d).

DSS must have received a new report of abuse, neglect, or dependency; and (4) the director of social services must have determined based on an assessment conducted pursuant to § 7B-302 that court action was required.

In cases where § 7B-401(b) is applicable, the director (or his designee) must file a petition in the existing case setting out the new allegations of abuse, neglect, or dependency in order for the trial court to have subject matter jurisdiction to adjudicate the juvenile. Once the petition is filed, the trial court is required to follow the provisions of Article 8 and conduct an adjudicatory hearing. If the court determines that the allegations in the petition were proved by clear and convincing evidence and adjudicates the juvenile as abused, neglected, or dependent, it must then conduct an initial dispositional hearing. *See* N.C. Gen. Stat. § 7B-807(a) (2015); N.C. Gen. Stat. § 7B-808(a) (2015); *see also* N.C. Gen. Stat. § 7B-901(a) (2015) ("The dispositional hearing shall take place immediately following the adjudicatory hearing and shall be concluded within 30 days of the conclusion of the adjudicatory hearing.").

The criteria set out in § 7B-401(b) were met in this case. In its 7 September 2016 order, the trial court stated that "[w]hile the Court retains jurisdiction, no further regular review hearings are scheduled." On 14 September 2016, DSS received a new Child Protective Services report from law enforcement officers. Two days later, DSS filed three motions for review based on this report as well as the social worker's subsequent meeting with Respondent. Thus, because § 7B-401(b) was triggered, DSS

was required to file a verified petition seeking an adjudication of the juveniles. The trial court was then required to conduct an adjudicatory hearing pursuant to the provisions of Article 8 to determine if an adjudication of abuse, neglect, or dependency was appropriate and — if so — to then conduct a dispositional hearing.

However, rather than filing a petition seeking such an adjudication, DSS instead merely submitted motions for review requesting that the trial court "hear and further consider the case of the juvenile . . . [due to a c]hange in situation." Therefore, based on N.C. Gen. Stat. § 7B-401(b), despite the fact that the trial court's 7 September 2016 order stated that the court was "retain[ing] jurisdiction," the court lacked subject matter jurisdiction to adjudicate the new allegations of abuse, neglect, or dependency absent a verified petition filed by DSS, which would — in turn — have implicated the provisions of Article 8.

Accordingly, even if DSS *had* properly filed a petition as required by § 7B-401(b), the trial court would have been required to then conduct a new *adjudicatory* hearing pursuant to Article 8, which it did not do in this case. Instead, the trial court simply conducted a *dispositional* hearing, determining that a change in circumstances had occurred that affected the best interests of the children and that — for this reason — removal of the children from Respondent's custody was necessary. *See T.R.P.*, 360 N.C. at 593, 636 S.E.2d at 792 ("[A] dispositional hearing . . . must be preceded by the filing of a petition and an adjudication.").

Thus, the trial court's error was twofold: (1) it took action based on the new allegations of abuse, neglect, or dependency without DSS having filed a verified petition that would have conferred subject matter jurisdiction upon it to do so; and (2) it conducted a dispositional hearing and subsequently entered a dispositional order removing custody of the juveniles from Respondent without first conducting a new adjudicatory hearing and actually adjudicating the children to be abused, neglected, or dependent.

Our ruling on this issue is supported by the language used by the General Assembly both in § 7B-401(b) and Article 8 of the Juvenile Code. As noted above, § 7B-401(b) expressly incorporates Article 8. *See* N.C. Gen. Stat. § 7B-401(b) (" . . . [T]he provisions of Article 8 of this subchapter shall apply to any subsequent report of abuse, neglect, or dependency . . . ."). Article 8 of the Juvenile Code guarantees a parent the right to a hearing before her child is adjudicated abused, neglected, or dependent. *See* N.C. Gen. Stat. § 7B-802 (2015).

Article 8 also makes the filing of a verified petition a mandatory prerequisite to such a hearing, stating, in pertinent part, that an adjudicatory hearing "shall be a judicial process designed to adjudicate the existence or nonexistence of any of the conditions alleged *in a petition*" and that "[t]he allegations *in a petition* alleging that a juvenile is abused, neglected, or dependent shall be proved by clear and convincing evidence." *Id.* (emphasis added); N.C. Gen. Stat. § 7B-805 (2015) (emphasis added).

- 11 -

Article 8 further provides that "[i]f the court finds from the evidence, including stipulations by a party, that the allegations *in the petition* have been proven by clear and convincing evidence, the court shall so state."  N.C. Gen. Stat. § 7B-807(a) (emphasis added); *see also T.R.P.*, 360 N.C. at 598, 636 S.E.2d at 795 (holding "the trial court has no power to act" where verified petition invoking subject matter jurisdiction was not filed prior to order removing custody).

It is important to note that a petition is not a mere technical requirement.  To the contrary, a petition in the form required by N.C. Gen. Stat. § 7B-402 ensures that the due process rights of a parent are protected by requiring a petitioner to make specific allegations of abuse, neglect or dependency and set out the relief it is seeking from the court in connection with the juvenile at issue.  *See T.R.P.*, 360 N.C. at 592, 636 S.E.2d at 791 ("[G]iven the magnitude of the interests at stake in juvenile cases and the potentially devastating consequences of any errors, the General Assembly's requirement of a verified petition is a reasonable method of assuring that our courts exercise their power only when an identifiable government actor 'vouches' for the validity of the allegations in such a freighted action.").  Thus, the petition allows a parent to fully understand the allegations being made and the relief being sought so as to provide her with a full and fair opportunity to rebut those allegations.

We note that our ruling in the present case is consistent with our decision in *McKinney*.  In that case, the Orange County DSS filed a document captioned "Motion

in the Cause" in an ongoing neglect and dependency action pursuant to N.C. Gen. Stat. § 7B-1102. *McKinney*, 158 N.C. App. at 443, 581 S.E.2d at 794. Although the motion contained various factual allegations, it failed to (1) state that it was a petition for termination of parental rights; (2) reference the statutory provisions governing termination of parental rights; or (3) request any specific relief from the court. *Id.* at 446, 581 S.E.2d at 796-97. After a hearing was held on DSS's motion, the trial court entered an order terminating the respondent-mother's parental rights to the juvenile. *Id.* at 443, 581 S.E.2d at 794.

On appeal, the respondent-mother asserted errors "not associated with subject matter jurisdiction[,]" but we nevertheless determined *ex mero motu* that the trial court lacked jurisdiction to enter its order. *Id.* at 443, 581 S.E.2d at 794-95. In our decision, we stated that "[t]o be valid, a pleading or motion must include a request or demand for the relief sought, or for the order the party desires the trial court to enter[.]" *Id.* at 444, 581 S.E.2d at 795. We ruled that "an examination of petitioner's motion reveal[ed] that it nowhere ask[ed] for the termination of respondent's parental rights" and did not "reference any of the statutory provisions governing termination of parental rights." *Id.* at 445-46, 581 S.E.2d at 796-97. Indeed, we noted that the motion "fail[ed] to request *any* relief, judgment, or order from the trial court." *Id.* at 446, 581 S.E.2d at 797. Notably, in holding that the trial court lacked subject matter jurisdiction to enter the order, we stated that "a trial court's general jurisdiction over

the type of proceeding or over the parties *does not confer jurisdiction over the specific action.*" *Id.* at 447, 581 S.E.2d at 797 (citation omitted and emphasis added).

We wish to emphasize that our decision today applies only to proceedings that fall within the purview of § 7B-401(b). Nothing in our ruling should be construed as holding that the trial court is divested of general jurisdiction in an abuse, neglect, or dependency action simply because it discontinues periodic judicial reviews. *See* N.C. Gen. Stat. § 7B-201 ("When the court obtains jurisdiction over a juvenile, jurisdiction shall continue until terminated by order of the court or until the juvenile reaches the age of 18 years or is otherwise emancipated, whichever occurs first."). Rather, we are simply holding that in cases where — as here — a director of social services seeks court action based on a new report of abuse, neglect, or dependency in a case that falls within the parameters of N.C. Gen. Stat. § 7B-401(b), the trial court lacks subject matter jurisdiction to adjudicate the juvenile as abused, neglected, or dependent absent the prior filing of a verified petition by DSS as required by Article 8. Moreover, a trial court in such circumstances cannot proceed directly to a dispositional hearing without first conducting an adjudicatory hearing and actually adjudicating the juvenile as abused, neglected, or dependent.

Accordingly, the trial court's 24 October 2016 order is vacated. *See McKinney*, 158 N.C. App. at 448, 581 S.E.2d at 798 (vacating trial court's order for lack of subject matter jurisdiction).

## Conclusion

For the reasons stated above, we vacate the trial court's 24 October 2016 order.

VACATED.

Judges HUNTER, JR. and MURPHY concur.