IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA19-158

 Filed: 15 October 2019

Rowan County, No. 16 JT 81

IN THE MATTER OF: E.B.

 Appeal by respondent-father from order entered 30 November 2018 by Judge

Kevin Eddinger in Rowan County District Court. Heard in the Court of Appeals 19

September 2019.

 Jane R. Thompson for petitioner-appellee Rowan County Department of Social
 Services.

 Miller & Audino, LLP, by Jeffrey L. Miller, for respondent-appellant father.

 ZACHARY, Judge.

 Respondent-Father appeals from the trial court’s order terminating his

parental rights. We conclude that there was sufficient evidence to support the trial

court’s finding of willful abandonment pursuant to N.C. Gen. Stat. § 7B-1111(a)(7).

Therefore, we affirm the termination order.

 Background

 The minor child E.B.1 was born in 2016. The day after her birth, the child’s

biological mother relinquished custody of her to Petitioner Rowan County

 1 Initials are used to protect the identity of the minor child.
 IN RE: E.B.

 Opinion of the Court

Department of Social Services (“DSS”) for the purpose of placing her for adoption. The

child’s biological mother identified Respondent-Father as a potential putative father.

 On 23 March 2016, Respondent-Father entered into an “Out of Home Family

Services Agreement” with DSS, and on 19 April 2016, a paternity test confirmed that

he was the minor child’s biological father. Thereafter, the minor child was placed in

foster care. Between 12 May 2016 and 25 January 2018, the trial court conducted six

Permanency Planning and Review Hearings. The trial court entered six resulting

orders that placed numerous requirements on Respondent-Father before he could be

reunified with the minor child. Among those requirements were that Respondent-

Father engage in various substance abuse, mental health, domestic violence, and

parenting education services. No juvenile petition was ever filed in the case.

 In April 2017, Respondent-Father requested that his sister, ShaVonnda

Young, a California resident, be considered as a placement for the minor child.

Placement of the minor child with Ms. Young was approved on 30 May 2018, but DSS

did not recommend the placement, and the child remained with her foster family. On

22 January 2018, Respondent-Father moved to California.

 DSS filed a petition to terminate Respondent-Father’s parental rights on 10

April 2018, alleging grounds of neglect, failure to make reasonable progress, and

willful abandonment. The petition came on for hearing before the Honorable Kevin

Eddinger over the course of four days between July and November 2018.

 -2-
 IN RE: E.B.

 Opinion of the Court

 By order entered 30 November 2018, the trial court terminated Respondent-

Father’s parental rights upon findings of grounds of neglect, pursuant to N.C. Gen.

Stat. § 7B-1111(a)(1); failure to make reasonable progress, pursuant to N.C. Gen.

Stat. § 7B-1111(a)(2); and willful abandonment, pursuant to N.C. Gen. Stat. § 7B-

1111(a)(7). Respondent-Father timely filed written notice of appeal.

 On appeal, Respondent-Father argues that the trial court erred in concluding

that grounds existed to terminate his parental rights. Respondent-Father also filed a

petition for writ of certiorari seeking this Court’s review of the six Permanency

Planning Orders entered in this case. Specifically, Respondent-Father contends that

those orders “were entered without subject matter jurisdiction or authority because

there was no pending juvenile action for abuse, neglect, or dependency filed under

the Juvenile Code at the time the Orders were entered.” Accordingly, Respondent-

Father contends that the trial court erred in basing the termination of his parental

rights on his failure to comply with the terms of those orders. We allowed Respondent-

Father’s petition for certiorari by order entered 15 August 2019.

 Discussion

 I. Standard of Review

 This Court reviews a trial court’s conclusion that grounds
 exist to terminate parental rights to determine whether
 clear, cogent, and convincing evidence exists to support the
 court’s findings of fact, and whether the findings of fact
 support the court’s conclusions of law. If the trial court’s
 findings of fact are supported by ample, competent

 -3-
 IN RE: E.B.

 Opinion of the Court

 evidence, they are binding on appeal, even though there
 may be evidence to the contrary. However, the trial court’s
 conclusions of law are fully reviewable de novo by the
 appellate court.

In re C.J.H., 240 N.C. App. 489, 497, 772 S.E.2d 82, 88 (2015) (citations and quotation

marks omitted).

 II. Permanency Planning Orders—Subject-Matter Jurisdiction

 The trial court entered six Permanency Planning Orders between 14 July 2016

and 8 March 2018 while the minor child was in the custody of DSS. Those orders

placed numerous requirements on Respondent-Father to overcome the barriers that

the trial court found and impeded his reunification with the minor child, including

that Respondent-Father engage in various substance abuse, mental health, domestic

violence,2 and parenting education services. During the 21 months preceding the

filing of the termination petition, Respondent-Father complied with some, but not all,

of those requirements.

 However, Respondent-Father contends, and DSS concedes, that the trial court

lacked subject-matter jurisdiction to conduct review hearings or enter the

Permanency Planning Orders in this case, in that DSS failed to file a proper juvenile

petition consistent with the requirements of N.C. Gen. Stat. §§ 7B-402(a) and 403(a),

 2Respondent-Father was previously the victim of domestic violence, and his domestic violence
assessment recommended that he complete the “Batterer’s Intervention Program.”

 -4-
 IN RE: E.B.

 Opinion of the Court

and thus no juvenile abuse, neglect, or dependency action was ever commenced.3 See

In re A.R.G., 361 N.C. 392, 397, 646 S.E.2d 349, 352 (2007) (“A juvenile abuse, neglect,

or dependency action is a creature of statute and is commenced by the filing of a

petition, which constitutes the initial pleading in such actions.” (quotation marks

omitted)); In re T.R.P., 360 N.C. 588, 591, 636 S.E.2d 787, 790 (2006) (noting that

“[t]he Juvenile Code sets out the specific requirements for a valid juvenile petition”

in order to invoke the court’s subject-matter jurisdiction to conduct review hearings

and enter permanency planning orders, including that the petition “ ‘be drawn by the

[DSS] director, verified before an official authorized to administer oaths, and filed by

the clerk, recording the date of filing’ ” (alteration in original) (citing N.C. Gen. Stat.

§ 7B-403(a) (2005)4)); see also In re T.P., ___ N.C. App. ___, ___, 803 S.E.2d 1, 7 (2017)

(“[A] petition in the form required by N.C. Gen. Stat. § 7B-402 ensures that the due

process rights of a parent are protected by requiring a petitioner to make specific

allegations of abuse, neglect or dependency and set out the relief it is seeking from

the court in connection with the juvenile at issue.”). Accordingly, Respondent-Father

asserts that “[n]either the court nor DSS had the legal authority to condition [his]

custody relationship with [the minor child] prior to the filing of the petition to

 3 The record reveals that the only pleading filed in this matter prior to the entry of the
Permanency Planning Orders was Petitioner’s “Motion for Review of Custody and Permanency
Planning,” which failed to satisfy any of the requirements under N.C. Gen. Stat. §§ 7B-401, -405.

 4 The current version of N.C. Gen. Stat. § 7B-403(a) contains the same pertinent language as
the 2005 version.

 -5-
 IN RE: E.B.

 Opinion of the Court

terminate his rights,” and that it was thus “prejudicial error for the court to then use

his failure to meet its conditions as the principal basis to terminate his parental

rights.”

 Indeed, because no abuse, neglect, or dependency action was commenced in the

instant case by the filing of a proper petition, the trial court was without subject-

matter jurisdiction to enter its six Permanency Planning Orders. See In re T.R.P., 360

N.C. at 593, 636 S.E.2d at 792 (“A trial court’s subject matter jurisdiction over all

stages of a juvenile case is established when the action is initiated with the filing of

a properly verified petition.”). Accordingly, each of those orders is void, and the

requirements imposed on Respondent-Father therein are nugatory. See id. at 590,

636 S.E.2d at 790.

 We therefore disregard the six Permanency Planning Orders that were entered

in this case, and review whether there was clear, cogent, and convincing evidence to

support the trial court’s findings of grounds to terminate Respondent-Father’s

parental rights without reference to any facts relating to his failure to comply with

the terms of the void orders.

 III. Order Terminating Respondent-Father’s Parental Rights

 Termination of parental rights proceedings are governed by independent

jurisdictional prerequisites. See N.C. Gen. Stat. § 7B-1101 (2017); see also In re

R.T.W., 359 N.C. 539, 553, 614 S.E.2d 489, 497 (2005) (“Each termination order relies

 -6-
 IN RE: E.B.

 Opinion of the Court

upon an independent finding that clear, cogent, and convincing evidence supports at

least one of the grounds for termination under N.C.G.S. § 7B-1111. . . . Simply put, a

termination order rests on its own merits.”), superseded by statute on other grounds

as stated in In re K.L., 196 N.C. App. 272, 674 S.E.2d 789 (2009); In re O.C., 171 N.C.

App. 457, 463, 615 S.E.2d 391, 395 (“Motions in the cause and original petitions for

termination of parental rights may be sustained irrespective of earlier juvenile court

activity.”), disc. review denied, 360 N.C. 64, 623 S.E.2d 587 (2005).

 N.C. Gen. Stat. § 7B-1101 provides, in pertinent part, that

 [t]he court shall have exclusive original jurisdiction to hear
 and determine any petition or motion relating to
 termination of parental rights to any juvenile who resides
 in, is found in, or is in the legal or actual custody of a county
 department of social services or licensed child-placing
 agency in the district at the time of filing of the petition or
 motion.

N.C. Gen. Stat. § 7B-1101; see also id. § 7B-1103(a)(4) (2017) (providing that a “county

department of social services . . . to which [a] juvenile has been surrendered for

adoption by one of the parents . . . of the juvenile[ ] pursuant to G.S. 48-3-701” has

standing to file a petition to terminate parental rights). Thus, pursuant to N.C. Gen.

Stat. § 7B-1101, the trial court is vested “with exclusive subject matter jurisdiction

to determine any petition or motion for termination of parental rights of any juvenile

in the legal or physical custody of DSS at the time of the filing.” In re K.J.L., 363 N.C.

 -7-
 IN RE: E.B.

 Opinion of the Court

343, 350, 677 S.E.2d 835, 839 (2009) (Timmons-Goodson, J., concurring) (original

emphasis omitted).

 In the instant case, in that the minor child was in the custody of DSS by virtue

of her biological mother’s relinquishment, DSS had standing to file the petition to

terminate Respondent-Father’s parental rights, thereby vesting the trial court with

subject-matter jurisdiction to enter an order terminating Respondent-Father’s

parental rights. See In re A.L., 245 N.C. App. 55, 60, 781 S.E.2d 856, 860 (2016)

(concluding that the trial court had subject-matter jurisdiction to enter an order

terminating the respondent’s parental rights where, “[b]y virtue of the mother’s

relinquishment, DSS had standing to file the termination petition pursuant to section

7B-1103(a)(4)”).

 Under the proper exercise of its subject-matter jurisdiction, the trial court

found that three grounds existed to terminate Respondent-Father’s parental rights.

One such ground was willful abandonment, pursuant to N.C. Gen. Stat. § 7B-

1111(a)(7), which provides for termination of parental rights where

 [t]he parent has willfully abandoned the juvenile for at
 least six consecutive months immediately preceding the
 filing of the petition or motion, or the parent has
 voluntarily abandoned an infant pursuant to G.S. 7B-500
 for at least 60 consecutive days immediately preceding the
 filing of the petition or motion.

N.C. Gen. Stat. § 7B-1111(a)(7).

 -8-
 IN RE: E.B.

 Opinion of the Court

 “Whether a biological parent has a willful intent to abandon his child is a

question of fact to be determined from the evidence.” In re S.R.G., 195 N.C. App. 79,

84, 671 S.E.2d 47, 51 (2009), disc. review denied and cert. denied, 363 N.C. 804, 691

S.E.2d 19 (2010). Such a finding must be supported by clear, cogent, and convincing

evidence of “conduct on the part of the parent which manifests a willful determination

to [forgo] all parental duties and relinquish all parental claims to the child.” Id.; see

also id. (“Willfulness is more than an intention to do a thing; there must also be

purpose and deliberation.” (quotation marks omitted)). “The findings must clearly

show that the parent’s actions are wholly inconsistent with a desire to maintain

custody of the child.” In re C.J.H., 240 N.C. App. at 503-04, 772 S.E.2d at 92.

 Relevant factors under subsection (a)(7) may include “a parent’s financial

support for a child and emotional contributions, such as a father’s display of love, care

and affection for his children.” In re D.E.M., ___ N.C. App. ___, ___, 810 S.E.2d 375,

377 (2018) (quotation marks omitted); see also In re McLemore, 139 N.C. App. 426,

429, 533 S.E.2d 508, 509 (2000) (“It has been held that if a parent withholds his

presence, his love, his care, the opportunity to display filial affection, and willfully

neglects to lend support and maintenance, such parent relinquishes all parental

claims and abandons the child.”). Moreover, while the “determinative period” for

adjudicating willful abandonment is the six months preceding the filing of the

juvenile petition, “the trial court may consider a parent’s conduct outside the six-

 -9-
 IN RE: E.B.

 Opinion of the Court

month window in evaluating a parent’s credibility and intentions.” In re D.E.M., ___

N.C. App. at ___, 810 S.E.2d at 378 (quotation marks omitted).

 In the instant case, the relevant six-month period ran from 10 October 2017

until 10 April 2018, when the petition to terminate Respondent-Father’s parental

rights was filed. The trial court made several findings of fact to support its

determination that Respondent-Father “willfully abandoned the juvenile pursuant to

N.C.G.S. § 7B-1111(a)(7),” which Respondent-Father has not challenged on appeal as

unsupported by clear, cogent, and convincing evidence. See In re Humphrey, 156 N.C.

App. 533, 540, 577 S.E.2d 421, 426 (2003) (“Findings of fact to which a respondent

did not object are conclusive on appeal.”).

 The trial court found that, prior to the relevant six-month period, Respondent-

Father had “stated . . . that he [was] ‘just going to allow [his] sister to handle the

situation,’ referring to [the minor child’s] care and placement.” The trial court’s

findings show that after Respondent-Father made his intention known, and during

the relevant six-month period, (1) Respondent-Father moved to California on 22

January 2018, without informing DSS of his move or providing DSS with his new

address; (2) Respondent-Father failed to attend the 26 October 2017 Permanency

Planning Hearing,5 and admitted that his absence was “without justifiable excuse”;

 5 Although we disregard Respondent-Father’s purported failures to comply with the terms of
the void Permanency Planning Orders, his failure to attend those proceedings is nevertheless
illustrative of Respondent-Father having willfully determined to forgo his parental duties.

 - 10 -
 IN RE: E.B.

 Opinion of the Court

(3) Respondent-Father likewise failed to attend the 25 January 2018 Permanency

Planning Hearing, having moved to California three days prior; (4) Respondent-

Father was a “no-show” at his scheduled child support hearing in January 2018; (5)

Respondent-Father did not request a single visit with the minor child during the six-

month period, despite the fact that he was allowed weekly visits; and (6) although the

minor child’s foster parents allowed Respondent-Father to engage in Skype calls with

the child, Respondent-Father did not make any such calls until May 2018, after the

termination petition was filed.

 Such findings sufficiently demonstrate that Respondent-Father willfully acted

in a manner “wholly inconsistent with a desire to maintain custody of the child.” In

re S.R.G., 195 N.C. App. at 87, 671 S.E.2d at 53; cf. In re C.J.H., 240 N.C. App. at

504, 772 S.E.2d at 92 (holding that the respondent’s “last-minute child support

payments and requests for visitation” did “not undermine the trial court’s conclusion

that [the] respondent had abandoned the juvenile,” where the trial court’s findings

otherwise showed that during the relevant six-month period, the respondent “did not

visit the juvenile, failed to pay child support in a timely and consistent manner, and

failed to make a good faith effort to maintain or reestablish a relationship with the

juvenile”); In re McLemore, 139 N.C. App. at 430-31, 533 S.E.2d at 510-11 (reversing

the trial court’s conclusion that the respondent did not willfully abandon his child

where the respondent “made no contacts with his child” during the relevant six-

 - 11 -
 IN RE: E.B.

 Opinion of the Court

month period); In re Apa, 59 N.C. App. 322, 324, 296 S.E.2d 811, 813 (1982)

(concluding that the trial court’s finding of abandonment was sufficiently supported

where, “except for an abandoned attempt to negotiate visitation and support, [the]

respondent made no other significant attempts to establish a relationship with [the

child]”).

 Accordingly, we affirm the trial court’s determination that grounds existed to

terminate Respondent-Father’s parental rights pursuant to N.C. Gen. Stat. § 7B-

1111(a)(7). Because we affirm the trial court’s finding of grounds pursuant to N.C.

Gen. Stat. § 7B-1111(a)(7), we need not address the remaining grounds for

termination found by the trial court. In re C.J.H., 240 N.C. App. at 497, 772 S.E.2d

at 88.

 Conclusion

 For the reasons stated herein, the trial court’s order terminating Respondent-

Father’s parental rights is affirmed.

 AFFIRMED.

 Judge ARROWOOD concurs.

 Judge HAMPSON concurs in part and dissents in part by separate opinion.

 - 12 -
No. COA19-158 – In re E.B.

 HAMPSON, Judge, concurring in part and dissenting in part.

 I fully concur with the majority in this case on two key points: (1) DSS had

standing to file a Petition seeking termination of Respondent-Father’s parental rights

and the trial court had subject-matter jurisdiction over this termination proceeding;

and (2) the trial court had no jurisdiction to enter the Permanency Planning Orders

imposing conditions and requirements upon Respondent-Father in derogation of his

constitutionally protected status as a parent without any judicial adjudicatory

proceeding establishing the child to be abused, neglected, or dependent. However,

because the grounds for termination alleged by DSS and adjudged by the trial court

are inextricably intertwined with the invalid review hearing process, I would

conclude the trial court erred in adjudicating grounds upon which to terminate

Respondent-Father’s parental rights. I would, thus, reverse the trial court’s

Termination of Parental Rights Order.

 Central to my overall reasoning in this case is that crucially, for purposes of

asserting ongoing jurisdiction under N.C. Gen. Stat. § 7B-200(b), there was never any

adjudication of the minor child as abused, neglected, or dependent. As such, between

February or March 2016 until entry of the trial court’s Termination of Parental

Rights Order, DSS was able to interfere with and deny Respondent-Father’s custodial

rights without any valid independent judicial determination Respondent-Father had

acted inconsistently with his constitutionally protected status as a parent. DSS was

then able to control placement of the child and impose requirements on Respondent-
 IN RE: E.B.

 Hampson, J., concurring in part, dissenting in part

Father ultimately leading to its purported establishment of grounds on which to

terminate Respondent-Father’s parental rights.6 Indeed, after utilizing the invalid

review hearing process and void Permanency Planning Orders in this case over the

course of several years, DSS, now with an Order terminating Respondent-Father’s

parental rights in hand, admits the trial court had no jurisdiction to enter these

Permanency Planning Orders restricting and conditioning Respondent-Father’s

parental rights.

 In my view, although DSS was authorized to file its Petition seeking

termination of Respondent-Father’s parental rights, it should have been required to

establish grounds independent from those derived as a result of the invalid review

proceedings. Here, DSS did not.

 The trial court’s Termination of Parental Rights Order rests on three grounds.7

First, the trial court concluded Respondent-Father had neglected the minor child

under N.C. Gen. Stat. § 7B-1111.

 Termination of parental rights based upon this statutory ground
 requires a showing of neglect at the time of the termination
 hearing or, if the child has been separated from the parent for a
 long period of time, there must be a showing of past neglect and
 a likelihood of future neglect by the parent.

 6 For example, DSS rejected placement of the child with the child’s aunt, who had become a
licensed foster parent in California, notwithstanding the fact this relative placement had been
assessed and approved under the Interstate Compact on the Placement of Children (ICPC). Instead,
DSS continued to seek termination of parental rights to allow the child’s current foster parents to
commence adoption proceedings.
 7 The majority opinion addresses only one of these grounds because it upheld one ground to

terminate parental rights and thus need not reach the remaining grounds.

 2
 IN RE: E.B.

 Hampson, J., concurring in part, dissenting in part

In re D.L.W., 368 N.C. 835, 843, 788 S.E.2d 162, 167 (2016). Here, Respondent-Father

has never had custody of the child because DSS has maintained custody of the child

since birth, placing her with foster parents. There is no finding by the trial court of

past neglect by Respondent-Father and no prior adjudication of neglect that might

otherwise serve as evidence of past neglect. See In re M.A.W., 370 N.C. 149, 153, 804

S.E.2d 513, 517 (2017). Moreover, the trial court’s order fails to include any finding

of a likelihood of future neglect should the child be placed in Father’s custody. Thus,

the trial court erred in concluding neglect existed as a ground to terminate parental

rights.

 Second, the trial court concluded Respondent-Father willfully left the juvenile

in foster care or placement outside the home for more than twelve months without

showing to the satisfaction of the court that reasonable progress under the

circumstances had been made in correcting those conditions that led to the removal

of the juvenile under N.C. Gen. Stat. § 7B-1111(a)(2). As an initial matter, the minor

child was removed from the mother’s custody at birth after testing positive for a

number of controlled substances and the mother relinquished her rights to the child

almost immediately. No order was ever entered removing the child from the parents

and there was no valid order requiring foster care or other placement outside the

home. Therefore, Section 7B-1111(a)(2) does not support termination of parental

rights in this case. In re A.C.F., 176 N.C. App. 520, 525–26, 626 S.E.2d 729, 734

 3
 IN RE: E.B.

 Hampson, J., concurring in part, dissenting in part

(2006) (“[W]e conclude the statute refers only to circumstances where a court has

entered a court order requiring that a child be in foster care or other placement

outside the home.”). In any event, any failure on the part of Respondent-Father to

make reasonable progress under the circumstances derives directly from the

requirements imposed on him by DSS now rendered nugatory.

 Third, the trial court concluded Respondent-Father had willfully abandoned

the juvenile for at least six consecutive months immediately preceding the filing of

the petition by DSS under N.C. Gen. Stat. § 7B-1111(a)(7). In this context:

 “Abandonment implies conduct on the part of the parent which
 manifests a willful determination to forego all parental duties and
 relinquish all parental claims to the child” In re Adoption of
 Searle, 82 N.C. App. 273, 275, 346 S.E.2d 511, 514 (1986) (citation
 omitted). Willfulness is “more than an intention to do a thing;
 there must also be purpose and deliberation.” Id. “Whether a
 biological parent has a willful intent to abandon his child is a
 question of fact to be determined from the evidence.” Id. at 276,
 346 S.E.2d at 514.

In re S.R.G., 195 N.C. App. 79, 84, 671 S.E.2d 47, 51 (2009).

 A judicial determination that a parent willfully abandoned her
 child, particularly when we are considering a relatively short six
 month period, needs to show more than a failure of the parent to
 live up to her obligations as a parent in an appropriate fashion;
 the findings must clearly show that the parent’s actions are
 wholly inconsistent with a desire to maintain custody of the child.

Id. at 87, 671 S.E.2d at 53.

 Here, the evidence and findings do not clearly show actions wholly inconsistent

with a desire to maintain custody of the child. Again, the whole reason DSS is able

 4
 IN RE: E.B.

 Hampson, J., concurring in part, dissenting in part

to claim abandonment during a six-month period is because, for 33 months, DSS

retained custody of the minor child under void orders including giving DSS discretion

to dictate and limit Respondent-Father’s visitation, which it did. The evidence

reflects during this time, Respondent-Father was advocating for a relative placement

of the minor child with his sister in California and was still seeking placement and

unification with the minor child. While awaiting approval of the ICPC assessment,

Respondent-Father moved to California. Respondent-Father’s actions in this case do

not manifest a willful determination to forego all parental duties and relinquish all

parental claims to the child. See id. Thus, Section 7B-1111(a)(7) does not provide a

ground to terminate Respondent-Father’s parental rights in this case.

 Consequently, the trial court’s Termination of Parental Rights Order should

be reversed.8 Accordingly, for the foregoing reasons, I respectfully concur in the

majority opinion in part and dissent in part.

 8 I certainly acknowledge that there may well have been grounds to support an initial
adjudication of the minor child as abused, neglected, and/or dependent and giving DSS custody. I also
acknowledge that grounds independent from DSS’ use of what it now admits to be an invalid process
may support termination of Respondent-Father’s parental rights.

 5