IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA20-37

Filed: 1 December 2020

Onslow County, No. 07 JA 354

IN THE MATTER OF: K.S.

Appeal by respondents from orders entered 4 October 2019 by Judge Sarah C. Seaton in Onslow County District Court. Heard in the Court of Appeals 3 November 2020.

> *Mercedes O. Chut, P.A., by Mercedes O. Chut, for respondent-appellant Shonna Schindler.*
>
> *Parent Defender Wendy C. Sotolongo, by Assistant Parent Defender J. Lee Gilliam, for respondent-appellant Jason Schindler.*
>
> *Onslow County Department of Social Services, by Richard Penley, for petitioner-appellee Onslow County Department of Social Services.*
>
> *Matthew D. Wunsche for appellee Guardian ad Litem.*

ARROWOOD, Judge.

Jason Schindler ("Mr. Schindler") and Shonna Schindler ("Mrs. Schindler") (collectively, the "Schindlers") appeal from orders entered 4 October 2019 terminating their guardianship of their juvenile grandchild, K.S. ("Kaitlyn").[1] On appeal, the Schindlers challenge only the termination of their guardianship as to

---

[1] Pseudonyms are used throughout the opinion to protect the identity of the juveniles and for ease of reading.

Kaitlyn. For the reasons discussed herein, we reverse the orders entered 4 October 2019 and remand this matter to the trial court to proceed in accordance with the mandate of this Court.

## I.        Background

This case involves a prior appellate decision handed down by this Court on 3 July 2018 and subsequent orders entered by the trial court following remand. It appears the trial court and the Onslow County Department of Social Services ("DSS") attempted to execute a short cut to reach a preferred result while bypassing the clear and direct mandate of this Court. If the correct procedure had been followed, this appeal would be unnecessary.

Below, in addition to issues pertinent to the instant appeal, we recite many of the same facts and procedural events discussed in our prior decision. *Matter of M.N.*, 260 N.C. App. 203, 816 S.E.2d 925 (2018).

Kaitlyn was born in August 2007. Three months later, on 16 November 2007, DSS filed a juvenile petition alleging Kaitlyn to be neglected (the "First Petition").

On 11 December 2007, the trial court adjudicated Kaitlyn neglected and abused, and granted physical custody of Kaitlyn to her maternal grandmother, Mrs. Schindler. Additional orders continuing Mrs. Schindler's physical custody of Kaitlyn were entered on 12 March and 18 April 2008.

On 19 September 2008, and by orders entered that day and on 4 February 2009, the trial court changed the plan to relative custody and granted primary legal and physical custody of Kaitlyn to both Mr. and Mrs. Schindler and secondary legal and physical custody to the paternal grandmother. Reunification efforts with Kaitlyn's biological mother were ceased at this time.[2] Subsequently, on 16 September 2009, the trial court entered an order (the "Guardianship Order") granting the Schindlers legal guardianship of Kaitlyn and "ceasing further reviews in this matter." *Id.* at 204, 816 S.E.2d at 927 (quotation marks omitted).

Nothing further was filed concerning Kaitlyn until 12 July 2016, when DSS filed a second petition alleging neglect and dependency stemming from the Schindlers' arrests on multiple drug-related charges (the "Second Petition"). The Second Petition differs from the First Petition insofar as the former alleges that Kaitlyn was neglected *and* dependent, and also offers different facts to support the allegations of neglect. Furthermore, the Second Petition, unlike the First Petition, related not only to Kaitlyn but also to two additional grandchildren and includes the Schindlers as respondents (and not the biological mother). Following several continuances, and a handful of non-secure custody hearings, the trial court held an adjudicatory hearing on the Second Petition on 13 February 2017. DSS dismissed its allegation of dependency and sought adjudication only on the issue of neglect.

---

[2] Kaitlyn's biological father is deceased.

Following the hearing, on 9 March 2017, the trial court entered an order adjudicating Kaitlyn and two of her siblings neglected and dependent, notwithstanding DSS' dismissal of the latter ground. On 9 November 2017, the trial court entered a corrected order adjudicating Kaitlyn neglected and acknowledging the dismissal of the allegations of dependency (the "Adjudication Order"). In the Adjudication Order, the trial court found that the Schindlers were granted guardianship of Kaitlyn as of 16 September 2009, the date of the Guardianship Order. The Adjudication Order states that DSS removed the juveniles from respondents' custody and maintained full legal custody of the juveniles (including Kaitlyn) with full placement authority.

Following a dispositional hearing on 7 June 2017, the trial court entered an order on 14 November 2017 terminating the Schindlers' guardianship of Kaitlyn (the "Disposition Order"). Kaitlyn and the other juveniles were to remain in the custody of DSS. The Schindlers appealed the Adjudication Order (9 November 2017) and the Disposition Order (14 November 2017).

On 3 July 2018, this Court reversed the Adjudication and Disposition Orders with respect to the adjudication and disposition of Kaitlyn only, as the "trial court failed to make sufficient findings of fact in its adjudication order to support the conclusion that Kaitlyn is a neglected juvenile, [and] because no evidence was introduced to support those necessary findings of fact[.]" *Id.* at 208, 816 S.E.2d at

929. In addition, the Court remanded the action for further proceedings "not inconsistent with th[e] opinion." *Id.*

On 3 July 2018, the same day this Court filed its opinion, DSS filed a motion for review seeking to conduct a permanency planning hearing and to terminate the Schindlers' guardianship of Kaitlyn. DSS alleged that the Schindlers, Kaitlyn's maternal grandparents, continued to have substance abuse problems, specifically abusing heroin, oxycodone, and suboxone. DSS also asserted that the Schindlers had tested positive for unprescribed controlled substances and accumulated drug charges while Kaitlyn was in their care.

On 4 October 2018, Mr. Schindler filed a motion raising, among other things, the affirmative defenses of *res judicata* and estoppel as it related to the prior adjudications and the 3 July 2018 motion filed by DSS. Mrs. Schindler orally joined the motion at a hearing held 8 October 2018.

On 14 December 2018, the trial court conducted a hearing to address the opinion of this Court as well as the motion filed by Mr. Schindler on 4 October 2018. In an order dated 4 October 2019 ("Juvenile Order I"), the trial court concluded that this Court had remanded the case for "further proceedings on findings of fact." The trial court also determined that it retained original and exclusive jurisdiction over the case. More importantly, Juvenile Order I provided DSS with the option of addressing the matter on remand for further findings of fact as to the adjudication of

Kaitlyn as a neglected juvenile or, alternatively, proceeding with its motion for review. The trial court explained that "[a]n action for petition to find a juvenile to be abused, neglected or dependent is a separate action altogether from a motion for review to terminate guardianship[.]" As such, the trial court decided that a "motion for review is the proper form of pleading to seek to terminate the guardianship of the Schindlers." The district court also denied the Schindlers' motion regarding *res judicata* and estoppel holding that these principles did not apply to a motion for review seeking to terminate guardianship.

On 24 April 2019, the trial court conducted a hearing pursuant to "N.C. Gen. Stat. §§ 7B-600 and 7B-906.1 on the motion for review/permanency planning" filed by DSS. As mentioned, DSS had previously filed a motion for review seeking to conduct a permanency planning hearing to terminate the Schindlers' guardianship of Kaitlyn on 3 July 2018. At the hearing, the Schindlers renewed their objections regarding their previous motions to dismiss based on *res judicata*, collateral estoppel, and violations of due process. The trial court overruled their objections as those issues had already been resolved by virtue of Juvenile Order I. The trial court also acknowledged that DSS had opted not to proceed to adjudication on the Second Petition and that DSS was not offering any further evidence or argument with respect to the same. The trial court concluded that DSS had instead "elected to proceed with the motion for review/permanency planning hearing as permitted under [N.C. Gen.

Stat. §] 7B-600 to review the court ordered guardianship of the juvenile with the [Schindlers]." For this reason, the trial court purported to dismiss the Second Petition as well as the associated Adjudication and Disposition Orders as they related to Kaitlyn.

Following the 24 April 2019 hearing, the trial court entered another order filed 4 October 2019[3] ("Juvenile Order II") terminating the Schindlers' guardianship of Kaitlyn and espousing a new permanent plan of guardianship for the juvenile with a secondary plan of custody with a court-approved caretaker. The Schindlers appealed Juvenile Orders I and II.

## II.    Discussion

The Schindlers raise several issues on appeal. Collectively, the Schindlers contend that the trial court lacked subject matter jurisdiction to terminate their guardianship of Kaitlyn on remand at a permanency planning hearing. In addition, the Schindlers contend that the trial court failed to comply with the North Carolina Rules of Evidence at the review hearings held on remand and consequently allowed the entry of inadmissible evidence that was insufficient to support the findings of fact and conclusions of law in Juvenile Orders I and II.[4] The Schindlers also assert that

---

[3] The district court entered two separate orders on 4 October 2019 memorializing its findings of fact and conclusions of law from the hearings held on 14 December 2018 and 24 April 2019.

[4] The Schindlers also proffer arguments based on *res judicata*, collateral estoppel, and the law of the case doctrine. In light of our holdings below, we do not reach these issues.

- 7 -

the trial court's proceedings on remand were inconsistent with this Court's mandate and opinion filed 3 July 2018.

### A. <u>Subject Matter Jurisdiction</u>

The Schindlers contend that the trial court lacked authority and jurisdiction to terminate their guardianship of Kaitlyn on remand at a hearing held pursuant to N.C. Gen. Stat. §§ 7B-600, 7B-906.1 (2019).

We review challenges to subject matter jurisdiction *de novo*. *In re K.A.D.*, 187 N.C. App. 502, 503, 653 S.E.2d 427, 428 (2007) (citing *Raleigh Rescue Mission, Inc. v. Bd. of Adjust. of Raleigh*, 153 N.C. App. 737, 740, 571 S.E.2d 588, 590 (2002)).

Pursuant to North Carolina Juvenile Code, trial courts have "exclusive, original jurisdiction over any case involving a juvenile who is alleged to be abused, neglected, or dependent." N.C. Gen. Stat. § 7B-200(a) (2019). This jurisdiction extends to guardians, as well. *See id.* at § 7B-200(b).

"In any case where the court finds the juvenile to be abused, neglected, or dependent, the jurisdiction of the court to modify any order or disposition made in the case shall continue during the minority of the juvenile, until terminated by order of the court, or until the juvenile is otherwise emancipated." N.C. Gen. Stat. § 7B-1000(b) (2019). The trial court retains jurisdiction over a juvenile "until terminated by order of the court or until the juvenile reaches the age of 18 years or is otherwise emancipated, whichever occurs first." N.C. Gen. Stat. § 7B-201(a) (2019).

DSS filed the First Petition alleging Kaitlyn neglected on 16 November 2007. Approximately one month later, on 11 December 2007, the district court entered an order finding Kaitlyn to be neglected and abused. On 16 September 2009, the trial court entered the Guardianship Order—which was neither appealed nor affected by this Court's opinion filed 3 July 2018. The Guardianship Order granted the Schindlers legal guardianship of Kaitlyn and secondary legal and physical custody to Kaitlyn's paternal grandmother. The Guardianship Order stated that DSS is "allowed to cease further reviews in this matter." The Guardianship Order also released the guardian *ad litem* and attorney advocate "from further reviews in this matter." Nothing further was filed concerning Kaitlyn until 12 July 2016, when DSS filed the Second Petition alleging neglect and dependency stemming from the Schindlers' alleged continued substance abuse and involvement in criminal activity.

Notwithstanding subsequent events, which are discussed below, the trial court retained subject matter jurisdiction over this case as a result of the filing of the First Petition on 16 November 2007. The trial court did not terminate jurisdiction by allowing DSS to "cease further reviews" or by releasing the guardian *ad litem* and attorney advocate from "further reviews." *In re S.T.P.*, 202 N.C. App. 468, 473, 689 S.E.2d 223, 227 (2010) (holding that the district court did not terminate its jurisdiction by using the words "Case closed" in disposition order); N.C. Gen. Stat. § 7B-1000(b). Moreover, the trial court did not lose juvenile jurisdiction when it

purported to dismiss the Second Petition on 4 October 2019, following remand by this Court. While this Court reversed (in part) the Adjudication and Disposition Orders, the opinion did not deprive the trial court of jurisdiction to review Kaitlyn's custody status under the First Petition. Because the district court has not terminated its jurisdiction by order, the trial court retains subject matter jurisdiction until Kaitlyn reaches the age of eighteen years or is otherwise emancipated, whichever occurs first. N.C. Gen. Stat. § 7B-201(a).

## B. Remand

The Schindlers argue that the trial court failed to comply with this Court's mandate on remand by holding a permanency planning hearing (on the motion for review filed by DSS in the First Petition case) rather than requiring DSS to demonstrate harm or risk of harm to Kaitlyn by clear and convincing evidence in an adjudicatory hearing related to the Second Petition.

"The general rule is that an inferior court must follow the mandate of an appellate court in a case without variation or departure." *Metts v. Piver*, 102 N.C. App. 98, 100, 401 S.E.2d 407, 408 (1991) (citing *D&W Inc. v. City of Charlotte*, 268 N.C. 720, 152 S.E.2d 199 (1966)). "On the remand of a case after appeal, the mandate of the reviewing court is binding on the lower court, and must be strictly followed, without variation and departure from the mandate of the appellate court." *Collins v. Simms*, 257 N.C. 1, 11, 125 S.E.2d 298, 306 (1962). While the Court has carved out

minor exceptions to this general rule, the case law is abundantly clear that the inferior court must rigorously adhere to the mandate of the appellate tribunal on remand.

On 3 July 2018, this Court filed its opinion remanding and reversing in part the Adjudication and Disposition Orders. We concluded that the trial court failed to make sufficient findings showing harm or creation of a substantial risk of harm to adjudicate Kaitlyn neglected. *Matter of M.N.*, 260 N.C. App. at 207-208, 816 S.E.2d at 929. The Court reversed the Adjudication and Disposition Orders because the "trial court failed to make sufficient findings of fact in its adjudication order to support the conclusion that Kaitlyn is a neglected juvenile, [and] because no evidence was introduced to support those necessary findings of fact[.]" *Id.* at 208, 816 S.E.2d. at 929. More specifically, we stated the following:

> While the trial court did find that the Schindlers had been arrested on drug-related charges, it failed to make any findings as to harm or risk of harm to Kaitlyn as a result of her guardians' alleged drug activities. Indeed, neither DSS nor a court-appointed Guardian Ad Litem ("GAL") introduced any evidence to support findings of harm or risk of harm to Kaitlyn, and the lone witness at the hearing did not testify regarding those factual issues.

*Id.* at 205, 816 S.E.2d at 927. As such, and consistent with the relief requested by all parties on this issue, this Court reversed the portions of the Adjudication and Disposition Orders adjudicating Kaitlyn neglected and remanded the action for

further proceedings "not inconsistent with th[e] opinion." *Id.* at 208, 816 S.E.2d. at 929.[5]

In a surreptitious effort to avoid the mandate of this Court, on 3 July 2018, DSS filed a motion for review under the First Petition. The district court proceeded to hold an initial hearing on the motion on 14 December 2018. Thereafter, the district court entered Juvenile Order I on 4 October 2019. In Juvenile Order I, the district court stated the following: "The language of the Court of Appeals' opinion does not appear to be readily clear regarding what was reversed and what was remanded back to this trial Court." The trial court characterized the pertinent issue as follows: "The issue is whether the matter was reversed and closed as to the juvenile [Kaitlyn], or whether it was remanded for further proceedings for finding[s] of fact at adjudication as to the juvenile [Kaitlyn]." The district court ultimately determined that the Court of Appeals "intended to remand the matter for further proceedings on findings of fact." Notwithstanding this finding, because of the procedural differences between a petition alleging neglect, on one hand, and a motion for review to terminate guardianship, on the other, the district court concluded that DSS' motion for review was ripe and properly before the court. Indeed, the trial court seemingly encouraged

---

[5] This Court also held that the Schindlers had standing to appeal the Adjudication and Disposition Orders. *Matter of M.N.*, 260 N.C. App. at 205, 816 S.E.2d at 928. We concluded that "[a]s court-appointed guardians and persons awarded legal custody of Kaitlyn, the Schindlers are parties to this action pursuant to [N.C. Gen. Stat. §] 7B-401.1 and have standing to . . . appeal pursuant to [N.C. Gen. Stat. §] 7B-1002." *Id.* at 208, 816 S.E.2d at 929.

DSS to circumvent the unambiguous mandate of this Court by allowing it to move "forward on the remand that the Court of Appeals has ordered **or** on their motion to review." DSS, of course, elected the latter option.

Subsequently, the district court held a hearing on 24 April 2019 to address the motion filed by DSS pursuant to N.C. Gen. Stat. §§ 7B-600, 7B-906.1. The district court thereafter entered Juvenile Order II on 4 October 2019, which set out its findings of fact and conclusions of law from this particular hearing. In a nutshell, Juvenile Order II purported to dismiss the Adjudication and Disposition Orders as well as the Second Petition; terminated the Schindlers' guardianship of Kaitlyn; released the Schindlers as parties; and entered a new permanent plan of guardianship for Kaitlyn.

The trial court erred by disregarding the unequivocal mandate of this Court. We reversed the Adjudication and Disposition Orders because the trial court failed to make sufficient findings of harm or the creation of a substantial risk of harm. *Matter of M.N.*, 260 N.C. App. at 207-208, 816 S.E.2d at 929. We then remanded the case for further proceedings "not inconsistent with th[e] opinion." *Id.* at 208, 816 S.E.2d at 929. However, instead of requiring DSS to provide sufficient evidence to adjudicate Kaitlyn neglected (as alleged in the Second Petition) by showing harm or risk of harm, the trial court indicated it was dismissing the Second Petition and permitting DSS to pursue its motion for review filed in the First Petition case. The district court

committed reversible error by conducting a permanency planning (or review) hearing terminating the Schindlers' guardianship of Kaitlyn without first conducting a new adjudicatory hearing on the Second Petition and actually adjudicating Kaitlyn to be neglected as instructed. *Compare* N.C. Gen. Stat. §§ 7B-401, 7B-402 (2019), *with* N.C. Gen. Stat. §§ 7B-600, 7B-906.1 (2019); *In re T.P.*, 254 N.C. App. 286, 292, 803 S.E.2d 1, 6 (2017).

In addition to attempting to circumvent the mandate of this Court, more troubling, Juvenile Order II purported to release (*i.e.*, remove over objection) the Schindlers as parties to the underlying actions. This portion of the order not only violates N.C. Gen. Stat. § 7B-401.1(c) (2019), but also contradicts this Court's unequivocal holding that the Schindlers were and are proper parties to these proceedings. *Matter of M.N.*, 260 N.C. App. at 208, 816 S.E.2d at 929 ("As court-appointed guardians and persons awarded legal custody of Kaitlyn, the Schindlers are parties to this action . . . .").

In short, by failing to comply with this Court's mandate, the trial court committed reversible error.

## III.    Conclusion

For the foregoing reasons, we reverse and vacate the orders entered 4 October 2019 insofar as they pertain to Kaitlyn. This matter is remanded to the district court to comply with the previous mandate of this Court. The court shall

make findings of fact under the Second Petition regarding whether the alleged activities of the guardians constituted harm or risk of harm to Kaitlyn. Once those findings have been established, the trial court shall draw the appropriate conclusions of law therefrom with respect to the disposition of the matter. Thereafter, the parties may proceed as permitted under law while taking into consideration this Court's previous holdings.

REVERSED AND REMANDED.

Judges BRYANT and STROUD concur.